551 So.2d 890 (1989)
In re ENLARGEMENT OF CORPORATE BOUNDARIES OF THE CITY OF BOONEVILLE, PRENTISS COUNTY, Mississippi.
PRENTISS COUNTY ANNEXATION COMMITTEE
v.
CITY OF BOONEVILLE, Mississippi.
No. 07-59560.
Supreme Court of Mississippi.
October 11, 1989.
*891 Joseph C. Langston, Sarah Carolyn Jubb, Langston Langston Michael Firm, Booneville, for appellant.
John A. Ferrell, Cunningham Smith & Ferrell, Booneville, for appellee.
En Banc.
ANDERSON, Justice, for the Court:
This appeal, of the Prentiss County Chancery Court's February 20, 1988, confirmation of the City of Booneville's annexation of 18 square miles surrounding the prior city limits, is brought by several Prentiss County property owners, referred to herein as Objectors. Having determined that the chancery court's interpretation of the law was correct and that its factual finding that the entire annexation was reasonable is supported by substantial, credible evidence, we affirm.

I.
On February 3, 1987, the City of Booneville adopted an ordinance enlarging its corporate boundaries from 6.9 square miles to 24.9 square miles. On March 16, 1987, the City filed its petition seeking to have the ordinance ratified, approved and confirmed. In its petition the City named the City of Jumpertown (Jumpertown) as a defendant because Jumpertown was the only town located within three miles of the proposed annexation. See, MCA § 21-1-31 (1972 & Supp. 1988). Jumpertown answered and offered no objection to the annexation conditioned on the trial court's ratification of a service agreement between Booneville and Jumpertown by which Jumpertown would determine who would provide water service to persons living within its Certified Service Area, part of which lies in the annexation area. Big V Water Association, Inc., Thrasher Water Association, Inc., five Prentiss County property owners (Objectors), and the Prentiss County Board of Education also answered the City's petition.
The hearing on the proposed annexation was held in the Prentiss County Chancery Court on July 28-31, 1987. Twenty witnesses, including various city and state officials, experts and several Prentiss County residents, testified for the City. Objectors called nine Prentiss County residents, an expert in engineering, the secretary of the Prentiss Co. School Board, and a former mayor of Booneville. The Prentiss County Board of Education called eight officials of the Prentiss Co. School District.
A study conducted by the Mississippi Research and Development Center and concluded in May, 1987, was entered into evidence. The study was designed to address the financial and planning feasibility of the proposed annexation. The Center's overall findings on feasibility were:
1. The city of Booneville is financially capable of extending the full level of its municipal services to the annexed areas in a timely manner.

*892 2. The city needs to expand beyond its present corporate limits to control growth and increase its growth potential for the future.
3. The city's annexation attempt appears to be fair and equitable, as newly annexed residents will receive additional services, lower insurance premiums, and other benefits to offset the consequent increase in local taxes.
In addition to this evidence, there was much testimony from the city's witnesses detailing the need for expansion, individual city departments' logistical ability to provide services to the newly annexed area, and the city's financial ability to provide those services. Objectors and the Prentiss County Board of Education put on little contrary proof on these issues. Instead, both focused on the devastating effect annexation would have on the Prentiss County School System in terms of losses in students, teachers, and money.
Objectors, the only appellants, argue that the chancellor erred in determining that annexation of the entire proposed area was reasonable and that the chancellor erred in determining that the city versus county school systems issues were irrelevant to the annexation issue.

II.

WAS THE CHANCELLOR MANIFESTLY WRONG IN FINDING THAT ANNEXATION OF THE ENTIRE AREA WAS REASONABLE?

A.
Objectors' position is that the trial court erred in ratifying the entire annexation and that as such the annexation is not reasonable or fair. Objectors urge this Court to either modify the annexation or remand to the trial court for modification so that the southwestern and northern most portions of the annexation area are excluded from the annexation.
In order to succeed in an annexation case the city must prove and the chancellor must find that the annexation is reasonable. City of Jackson v. City of Ridgeland and City of Madison, 551 So.2d 861 (Miss. 1989) and Bassett v. Town of Taylorsville, 542 So.2d 918, 920 (Miss. 1989) and cases cited therein. This reasonableness standard "has in mind the interests both of the municipality seeking annexation and, ..., of the owners of property and other inhabitants of the area sought to be annexed." Id. Based on its reasonableness determination, the chancery court may approve the annexation, deny the petition, or modify the proposed annexation. City of Jackson v. City of Ridgeland and City of Madison; In re Enlargement of Boundaries of Yazoo City, 452 So.2d 837, 840 (Miss. 1984); and, MCA § 21-1-33 (1972 & Supp. 1988). This Court may reverse only if the trial court's finding of ultimate fact that the annexation was reasonable is manifestly wrong or without the support of substantial, credible evidence. City of Jackson v. City of Ridgeland and City of Madison, supra; Bassett v. Town of Taylorsville, 542 So.2d at 921; McElhaney v. City of Horn Lake, 501 So.2d 401, 403 (Miss. 1987); and, Enlargement of Boundaries of Yazoo City, 452 So.2d at 838.
Over the years this Court has developed numerous factors that a chancellor should consider in reaching his reasonableness determination. These factors, indicia of reasonableness, are not separate and distinct tests but should lead to a determination based on the totality of the circumstances. Bassett v. Town of Taylorsville, 542 So.2d at 921-22, citing City of Greenville v. Farmers, Inc., 513 So.2d 932 (Miss. 1987). This Court's most recent annexation opinions identify 12 such factors. See, City of Jackson v. City of Ridgeland and City of Madison, and Bassett v. Town of Taylorsville, supra. Only two of the twelve factors come into play in the instant case. There was little or no contradictory proof on the other ten factors. Objectors argue that annexation of the southwestern portion of the proposed area is not reasonably within the path of the city's growth and that annexation of the northern most portion of the proposed area is unreasonable because a special flood hazard area, which runs east and west and bisects that northern portion, is a natural barrier.

*893 B.

Is SW Portion Reasonably within the Path of City's Growth?
Lanny McKay, a community planner with the Research and Development Center, testified that Booneville's normal path of growth was in all directions, with the northwestern section being the strongest. A map of existing businesses, industries and residences in the annexation area, indicates that industry is springing up in the proposed annexation area in all directions and locating primarily around the larger highways and bypasses. McKay explained that the location of such highways and bypasses provides a good way to determine a city's path of growth. Highway 45 which runs through the center of the city from the southwest corner to the north has industrial/commercial development at both ends, north of Booneville and southwest of Booneville. In the area south of Booneville industry is located on Meadow and Meadow Creek Roads. The largest industrial/commercial growth is in the east/southeast where the Highway 30/4 bypass is located. A Highway 4 bypass is scheduled to be constructed from the east corner of the corporate limits then north and finally west through the northern part of the annexation area. This bypass will intersect proposed Highway 45 bypass which will hit the annexation area in the west section and travel through the northwest section of the annexation area. McKay testified that these two bypasses would lead to increased residential and commercial development in those areas, which according to the map would be the western, northwestern and northern portions of the annexation area.
Objectors submit that when the Highway 45 bypass is completed it will lead businesses and residents away from old Highway 45 and, therefore, annexation of the southwestern portion of the proposed annexation area is unreasonable. (Old Highway 45 runs through the southwest portion.) However, Objectors offered no proof at trial that this phenomenon would occur. The chancellor found that Booneville's reasonable path of growth was in all directions, "with less emphasis to the southwest." We are of the opinion that the Objectors' speculation on the future of the southwest portion should not result in a finding of manifest error, particularly in light of McKay's testimony that Booneville's path of growth was in all directions.

C.

Natural Barriers
McKay testified that there were no natural barriers in the proposed annexation area. A map which was entered into evidence does indicate the existence of three special flood hazard areas, two in the north portion and one in the east portion of the annexation area. McKay explained that these areas could be developed residentially and commercially and would be protected under the federal flood insurance program if annexed by the city. The map also shows that, while sparse, there are some residences and businesses located in the hazard areas even though the county does not participate in the federal insurance program.
A woman who owns over 100 acres of farmland in the northern portion of the annexation area testified for the Objectors that draining that portion of her farm that lies in a flood hazard area had cost her $4,000.
On this evidence, the chancellor determined that there were no natural barriers in the annexation area that would adversely affect growth. In light of the conflicting evidence, we can not say that the trial court was manifestly in error in its determination. After considering the totality of the circumstances, it is clear that the chancellor's approval of the entire annexation was supported by substantial credible evidence.
This assignment of error is denied.

III.

WAS THE CHANCELLOR MANIFESTLY IN ERROR IN HOLDING THAT THE CITY AND COUNTY SCHOOL SYSTEMS WERE IRRELEVANT TO A DETERMINATION OF THE REASONABLENESS OF THE ANNEXATION?
At trial the Prentiss County School Board and Objectors objected to annexation *894 because of the allegedly disastrous effect that such an annexation would have on the Prentiss County School District (PCSD) and its school age children. All parties involved in the annexation hearing were operating on the assumption that, by virtue of MCA § 37-7-611 (1972), the annexation would result in an automatic gain to the Booneville Municipal Separate School District (BMSSD) of approximately 502 students. The extensive testimony on the school systems' issue established that the BMSSD was in far better shape than the PCSD. Three of the four county high schools did not have enough students and corresponding teachers to meet the state accreditation requirements. The loss of students from those three schools would be devastating. Assuming that annexation would result in the automatic merging of those 502 students into the BMSSD, the PCSD would lose approximately 20% of its student body and teaching positions, 10% of its local tax base and $1 1/2 Million in state and federal funds. The chancellor's ruling on this issue was as follows:
Due to the objections and contentions of the Objector, Prentiss County School District, this Court feels that it must address certain questions of law and fact it feels will lay to rest many of the claims of unreasonableness of annexation.
Firstly, the City of Booneville, Mississippi, a municipal corporation, and Booneville Municipal Separate School District, a statutory body politic are separate and distinct legal entities. Even though these two entities interact, that is, the City appoints the members of the Board of Trustees, and other such items, the petitioner or plaintiff in this case being the City of Booneville, is not one in the same as the Booneville Municipal Separate School District. Although for years the statutory law of this State was that the area embraced within the corporate boundaries of a city was the same area served by a separate school district, that law has now changed with the Mississippi Code of 1972, § 37-7-601, et. seq., Supplement 1986. Because of change in the laws of this State, the annexation of new areas by a municipality does not add or make that area a part of any existing municipal separate school district. The allowing of the annexation of all or any part of the area by the City of Booneville in this case will not automatically take away students, land, or destroy the tax base of the Prentiss County School District... .
Secondly, the providing of a separate school district for the benefit of the educable school age children within the corporate boundaries is not a service that is mandated by the laws of this State. Quite frankly, this Court has found no law that mandates creation of a separate school district by a city.
In summary, it is this Court's opinion that the proposed annexation does not have an unreasonable impact upon the Prentiss County School District. The fact being that any area allowed to be annexed by Booneville will not automatically come within the Booneville Municipal Separate School District. It has no bearing on the reasonableness of the proposed annexation. It is my opinion of the law that the area that would be added to the City of Booneville will not become a part of the Booneville Municipal Separate School District by virtue of the old laws of this State, or the laws that exist at this time.
On appeal, Objectors, not the Prentiss County School Board, but rather the named property owners, argue that the chancellor erred as a matter of law because the 1987 repeal of MCA § 37-7-611 is not effective as it has not been precleared by the federal government as it must be under the Voting Rights Act of 1965. They argue that preclearance has been denied, will be denied, and should be denied because the repeal of MCA § 37-7-611 places those people in the annexation area in the anomalous position of sending their children to Prentiss County schools and being able to vote, indirectly on city school matters while being deprived of the right to vote on county school matters. Finally, they urge this Court to determine that the repeal of § 37-7-611 is not effective and that, therefore, the annexation *895 is unreasonable because of the effect on the Prentiss County School system.
In Sperry Rand Corp. v. City of Jackson, 248 So.2d 810 (Miss. 1971), this Court was faced with what the City of Booneville argues is an analogous question. In that case, this Court stated:
We find no merit in the contention of the appellant that this case should be reversed because the city failed to comply with the United States Voting Rights Act of 1965, which requires that before an ordinance extending city limits can become effective it be approved as required by Section 5 of the Act. The record in this case is silent as to whether the city has taken any action to have the ordinance approved as required by Section 5 of the Voting Rights Act of 1965. Our statute does not require the city to have its ordinance approved or confirmed by anyone other than the chancery court. What we are concerned with on this appeal is whether the city has complied with our law in the enactment of the ordinance extending the city limits; and we find that it has done so. In any event, as we understand what was said by the Supreme Court of the United States, in Perkins v. Matthews, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971), is that it holds that the city cannot enforce the ordinance until it has complied with Section 5 of the Voting Rights Act. It does not hold that this must be done before the ordinance extending the city limits is enacted or before it is ratified, confirmed and approved by the chancery court. A municipality has no way of knowing prior to the final adjudication by the chancery court or this Court if an appeal is had, whether an ordinance will become effective.
Sperry Rand, 248 So.2d at 812. This Court's two most recent annexation cases include the following footnote:
Of course, the courts of this state have no authority to address the matter of preclearance, which by virtue of Section 5 of the Voting Rights Act of 1965 may only be done by federal authorities. 42 U.S.C. § 1973c; Perkins v. Matthews, 400 U.S. 379, 388-95, 91 S.Ct. 431, 437-39, 27 L.Ed.2d 476, 484-89 (1971); Dotson v. City of Indianola, 514 F. Supp. 397, 399 (N.D.Miss. 1981)... .
City of Jackson, supra, n. 5; and, Bassett v. Taylorsville, supra, 542 So.2d at 920, n. 3.
The repeal of § 37-7-611 was part of the Mississippi Uniform School Law of 1986, Laws 1986, ch. 492, § 1, et. seq. In enacting this legislation, the legislature included a provision that the Act would take effect and be in force from and after July 1, 1987, except for certain sections which would be effective immediately after passage. Laws 1986, ch. 492, § 205. Section 205 also provided that § 203 would not be effective until precleared under Section 5 of the Voting Rights Act of 1965. Section 203 is that section of the 1986 School Law dealing with submitting to the voters of any county with elected county superintendents of education the issue of whether they wanted to abolish the position. Notably, the legislature did not make the effectuation of § 47 of the Act, that section repealing § 37-7-611, dependent on preclearance.
Whether the repeal of § 37-7-611 must be precleared or will be precleared is an exclusively federal question. The fact that the Prentiss County School District does not automatically lose the children in the annexation area means that the concerns expressed at the hearing on this case will not automatically come to pass. Finally, in spite of the repeal of § 37-7-611, there are statutes in effect which would allow for alterations of these two school districts. See, MCA § 37-7-103, et. seq. These statutes establish procedures, separate and apart from our state statutes governing annexation of territory by a municipality. The chancellor was correct in concluding that the annexation would not affect the status quo of the Prentiss County School System and in making his determination based on the repeal of § 37-7-611. For the foregoing reasons, we affirm the chancery court's fact findings and conclusions of law.
AFFIRMED.
*896 ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
BLASS, J., and DAN M. LEE, P.J., dissent.
BLASS, Justice, dissenting:
The majority finds the annexation by the City of Booneville of 18 square miles reasonable. I disagree. In my opinion enlarging Booneville's corporate boundaries from 6.9 square miles to 24.9 square miles, on the evidence in the record, is patently unreasonable.
This court points to numerous factors used by a chancellor in determining whether an annexation is reasonable, candidly noting that in reality a determination of reasonableness is based upon the totality of the circumstances. See City of Jackson v. City of Ridgeland and City of Madison, 551 So.2d 861 (Miss. 1989) Dodd v. City of Jackson, 238 Miss. 372, 396-97, 118 So.2d 319, 330 (1960); McElhaney v. City of Horn Lake, 501 So.2d 401, 403-404 (Miss. 1987); City of Greenville v. Farmers, Inc., 513 So.2d 932, 941 (Miss. 1987). The majority then focuses on only two of the twelve factors enumerated in prior opinions, the path of growth of Booneville and the natural barrier of the flood hazard area, as determinative. In so doing, the majority ignores several of the indices which, in my opinion, render the annexation unreasonable.
First, and foremost, the municipality has failed to show a need for expansion. Booneville's mayor testified that the city was dying. A community planner characterized the city's growth as "sluggish", noting a tendency among American young familes to leave towns and live on their perimeters. Industrial and commercial development is much higher outside the city limits. Based upon this type of evidence, the chancellor found that the city needed to expand, despite this court's indication in City of Greenville, that "urban sprawl" is not sufficient indicia of need to expand to justify wholesale annexation of rural areas. City of Greenville, 513 So.2d at 934. Furthermore, the fact that the legislature saw fit to create municipalities to serve the citizens, in no way implies that a city which no longer serves the needs for which it was created retains a right to exist; or expand in order to continue in existence.
Second, the chancellor, and the majority have failed to seriously consider the impact of annexation on those within the proposed area. The chancellor found that although the tax burden on the residents and landowners in the annexed area would be increased, these costs were outweighed by the benefits derived from the annexation. These findings were contrary to the perceptions of objectors, residents of the proposed annexation area, who testified that the annexation of farm land would adversely impact profitability of the farms located therein. As we stated in Western Line Consol. v. City of Greenville, 465 So.2d 1057, 1059 (Miss. 1985), "The common thread that must run through any reasonableness criteria is fairness. An unreasonable annexation is an unfair one." It is the duty of the chancellor and of this court to protect the rights of those who are otherwise without protection in this process.
In my opinion, this annexation is unfair and therefore unreasonable. This case illustrates the unacceptable state of our law with respect to annexation. Chancellors are deciding cases without meaningful direction from this court. We state that the decision cannot be overturned unless there is a finding of manifest error, yet there are no guidelines from which to find such error. Ultimately, chancellors and this court are deciding whether or not annexations are reasonable on the basis of personal judgments, not law.
It is very clear from this record that the growth which surrounds Booneville is not taking place because of the vitality of the city, the superior excellence of its cultural advantages, or the dedication and wisdom of its governing fathers. No doubt its citizens are fine persons but the city, as a city, has ceased to prosper. The record portrays it as moribund. It wants a new heart and lungs. It should only be allowed to get them from volunteers. There are no volunteers. It seems very clear to me that *897 it is simply wrong, unjust, and unfair to let the officials of the City of Booneville, elected by the people of the city, increase its size by 361%, using as the chief argument the fact that the city is "drying up." It seems to me that spreading the blight over an area nearly four times the size of the original site is a doubtful cure. It may simply spread the illness. I see no substantial benefit to eighteen square miles of rural land, now to be taxed for the benefit of Booneville, and say, without fear of contradiction, that we have no case law which requires our approval.
We did not hesitate to reverse the chancellor in City of Jackson, supra, although he had made rather specific findings on most of the twelve factors this Court has pointed out in earlier opinions. The chancellor concluded that the expansion of the City of Jackson was unreasonable. We relied upon the totality of the circumstances and reversed. That means that we disagreed with the chancellor. Here, we look at only two of the factors and ignore the totality of the circumstances. This time we agree with the chancellor. We ignore the unfairness to the owners and the residents of the eighteen square miles whose wishes and rights are being sacrificed to afford Booneville new revenues and new territory, in the hope that it will fare better in the future than it has in the past.
In my opinion we cannot reconcile our holding here with the court's treatment of the Greenville "urban sprawl" problem in Western Line Consolidated and City of Greenville. There the court found part of the annexation reasonable and part unreasonable. Here I think the City of Greenville Court would have found it all unreasonable.
I would reverse and render.
DAN M. LEE, P.J., joins this opinion.