# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-AN-00613-SCT

*IN THE MATTER OF THE ENLARGEMENT AND EXTENSION OF THE MUNICIPAL BOUNDARIES OF THE CITY OF BILOXI, MISSISSIPPI: GEORGE S. LEE, GERALD FOUNTAIN, ALBERT GOSS, PAUL McKAY, JANICE MASSEY, MARTHA SPENCE, JERRY BENEDICT, CAROLYN RICHARDSON, HARRISON COUNTY, MISSISSIPPI AND HARRISON COUNTY SCHOOL DISTRICT*

*v.*

*CITY OF BILOXI, MISSISSIPPI; CITY OF D'IBERVILLE, MISSISSIPPI; AND BILOXI PUBLIC SCHOOL DISTRICT*


HOLMES S. ADAMS

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/1997 |
| TRIAL JUDGE: | HON. W. E. BEARDEN, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JOSEPH R. MEADOWS |
| | ALBERT LIONEL NECAISE |
| | DALE F. SCHWINDAMAN, JR. |
| | KAREN J. YOUNG |
| ATTORNEYS FOR APPELLEES: | VIRGIL G. GILLESPIE |
| | JERRY L. MILLS |
| | RONALD G. PERESICH |
| | JAMES L. CARROLL |
| | VIRGINIA LoCOCO |
| | WILLIAM ARMISTEAD |
| | GREG A. CARAWAY |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED- 07/29/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: 08/19/1999 | |


**EN BANC.**


**SMITH, JUSTICE, FOR THE COURT:**

¶1. This case comes to the Court on appeal from the Chancery Court of Harrison County by certain resident objectors aggrieved by the Chancellor's determination of reasonableness as to a portion of parcel A of the proposed annexation area in the City of Biloxi's 1995 annexation ordinance enlarging the city's corporate boundaries. We hold the chancellor's determination was reasonable as to parcel A. Therefore, we affirm.

¶2. This case was consolidated with the case of *City of Biloxi v. City of D'Iberville* which was substituted for the D'Iberville Water and Sewer District (the "District"), wherein Biloxi appealed from an adverse ruling of the Circuit Court of Harrison County concerning allegations of due process violations and Biloxi's failure to timely file a Bill of Exceptions.

¶3. On June 11, 1999, Biloxi and D'Iberville filed a joint motion to dismiss that appeal and announced same to this Court at oral argument on June 14, 1999. Having considered that motion, we agree with the parties and dismiss the case by separate order.

## STATEMENT OF THE CASE

### Statement of the Facts

¶4. On March 6, 1995, the Biloxi City Council unanimously adopted an ordinance enlarging the city's corporate boundaries. The ordinance included a valid legal description of five parcels of annexed territory which are listed as Parcels A through E and are delineated on the map and are generally referred to as follows:

Parcel A- the northern annexation area-it consists of a large area north of the Tchoutacabuffa River and across I-10 to the DeSoto National Forest (the majority of the area and the only parcel contested by the objectors).

Parcel B- the Goat Island annexation area- it consists of mostly water in the Back Bay and the unpopulated island known as Goat Island.

Parcel C- the Deer Island annexation area-it consists of portions of the Mississippi Sound and the unpopulated Deer Island.

Parcel D- the Fernwood School annexation area-a very small area on the Gulfport/ Biloxi border that includes Fernwood Junior High School.

Parcel E- the Beauvoir annexation area--this the Jefferson Davis historical site known as Beauvoir.

¶5. The ordinance also contained a valid legal description of the boundaries for the entire city after the annexation. The proposed annexation area (hereinafter, the "PAA") was approximately 54 square miles of which 28 percent is water. The ordinance of annexation described in general the proposed improvements to be made in the annexed territory, the time frame of such improvements, and the municipal services to be provided.

### The Proceedings Below

¶6. On March 21, 1995, the City of Biloxi, Mississippi (hereinafter "Biloxi") filed its Petition for Approval, Ratification and Confirmation of the Enlargement or Extension of its Municipal Boundaries. Various entities,

including Harrison County, Mississippi, the Harrison County School District, and the individual objectors (collectively as the "Objectors") as well as the City of D'Iberville ("D'Iberville"), intervened and filed objections to this proposed annexation.

¶7. Rather than initially joining the Objectors, the D'Iberville Water & Sewer District (the "District") petitioned the Harrison County Board of Supervisors (the "Board") to annex a certain area of Harrison County adjacent to its present boundaries on May 13, 1996, which happened to encompass a portion of parcel A as proposed for annexation by Biloxi. Specifically, the area to be annexed by the District was based on the following legal description:

> The POINT OF BEGINNING of the area to be annexed is the point where the center line of Cypress Creek intersects the Harrison/ Jackson County lines; from said POINT OF BEGINNING run thence North along the East line of Harrison County, Mississippi, and the West line of Jackson County, Mississippi, to the Northeast corner of Section 21, Township 6 South, Range 9 West, Harrison County, Mississippi; thence run West and along the North line of Section 21, Section 20, and Section 19 to the point where the center line (running North and South) of Section 19, Township 6 South, Range 9 West intersects the North line of said Section; thence run South and along said center line of Sections 19, 30, and 31, Township 6 South, Range 9 West and continuing along the center line of Sections 6 and 7 of Township 7 South, Range 9 West to the point where the center line of said Section 7 intersects the North right-of-way of Interstate Highway No. 10; thence run East along the North margin of the right-of-way of Interstate 10 to the point where the East line of Section 8, Township 7 South, Range 9 West intersects said North margin; from said point run thence North along said Section line and along the West line of the city limits of D'Iberville, Mississippi, to the point that such line, or an extension thereof, intersects the centerline of the Tchoutacabuffa River; thence run East along the center line of the Tchoutacabuffa River and Cypress Creek to the POINT OF BEGINNING.

¶8. A hearing was noticed via publication in The Sun Herald on May 17, May 24, May 31, and June 7, 1996. At the public hearing on June 10, 1996, the Board entered a Resolution for the District's petition to go into effect on July 8, 1996. Notice of this Resolution was via publication in The Sun Herald on June 19, June 26, and July 23, 1996.

¶9. On July 23, 1996, Biloxi filed a Notice of Appeal to the Circuit Court of Harrison County, Second Judicial District, Mississippi, contesting the decision of the Board. The District filed a motion to docket and dismiss for failure to properly perfect the appeal and a hearing was held on October 11, 1996. Meanwhile, the trial of the Biloxi annexation case with the Special Chancellor W. E. Bearden, Jr., presiding, began on October 14, 1996, and concluded on November 7, 1996.

¶10. On October 16, 1996, the Circuit Court entered an order dismissing Biloxi's appeal of the Board's decision for lack of jurisdiction due to the failure of Biloxi to file a proper bill of exceptions.

¶11. Aggrieved by the circuit court dismissal for lack of jurisdiction, Biloxi timely appealed to this Court and raised the following contention of error:

> **I. WHETHER THE CIRCUIT COURT ERRED IN DISMISSING BILOXI'S APPEAL WHERE THE REASON FOR BILOXI'S FAILURE TO TIMELY FILE A BILL OF EXCEPTIONS WAS DUE TO THE VIOLATION OF ITS DUE PROCESS RIGHTS.**

¶12. By order dated June 30, 1997, this Court substituted D'Iberville for the District as the Appellee. By order dated December 22, 1997, this Court *sua sponte* consolidated this appeal with the collateral case involving these parties and issues. In that order, this Court abated determination of the one contention of error until such time as the Biloxi annexation case reached a Final Judgment.

¶13. On February 14, 1997, the Chancellor entered his opinion approving the Biloxi annexation of Parcels B through E entirely, and most of Parcel A. Annexation of Parcel A was specially reduced so as not to overlap with area annexed by the District and immediately north of D'Iberville. Specifically, annexation of a portion of parcel A was approved according to the following legal description:

> All of that property located in Harrison County, Mississippi, BEGINNING at a point where the marked channel of Back Bay of Biloxi or Big Lake, as the same may be designated, intersects a line common to Sections 20 and 21, Township 7 South, Range 10 West, and, from said POINT OF BEGINNING, run northerly, along said line common to section 20 and 21, Township 7 South, Range 10 West, to the point of intersection with the thread of the Big Biloxi River; thence following the meanderings of the thread of said Bib Biloxi River, run in a general northerly and northwesterly direction, through Sections 5, 8, and 17, Township 7 South, Range 10 West, Sections 31 and 32, Township 6 South, Range 10 West; thence continuing along the thread of said river in a generally northerly and northwesterly direction to its intersection with the west line of Section 30, Township 6 South, Range 10 West; thence northerly along the west line of said Section 30 to the half section line; thence easterly along the half section lines of Sections 30, 29, 28, 27, 26, and 25, Township 6 South, Range 10 West to the west line of Section 30, Township 6 South, Range 9 West; thence easterly along the half section line of said Section 30 to the middle of said section; thence southerly along the center line of Section 30 and 31, Township 6 South, Range 9 West; and continue southerly along the center line of Sections 6 and 7, Township 7 South, Range 9 West to the point where the center line of said Section 7 intersects the south right-of-way line of U.S. Interstate Highway 10; thence run in a westerly direction, along said south right-of-way line of U.S. Interstate Highway 10, to the intersection with the thread of Tchoutacabuffa River in Section 12, Township 7 South, Range 10 West; thence, following the meanderings of the thread of said Tchoutacabuffa River , run in a general southwesterly direction to the mouth of said river at Big Lake; thence run southerly, following the center line of a marked channel, to Popps Ferry Bridge; thence run in a general westerly direction, along the marked channel of Big Lake to the point of intersection with line common to Sections 20 and 21, Township 7 South, Range 10 West, and to the POINT OF BEGINNING.

¶14. On May 9, 1997, the Final Judgment Approving the Enlargement and Extension of the Boundaries of the City of Biloxi, Mississippi, was filed. The primary objector at trial, D'Iberville, did not appeal. The Objectors perfected Notices of Appeal.

¶15. By separate order dated June 21, 1999, this Court granted the joint motion of the City of Biloxi and the City of D'Iberville to voluntarily dismiss the appeal No. 96-CA-01201-SCT.

¶16. Aggrieved by the decision of the Chancellor, the Objectors raise the following contentions of error:

**I. WHETHER THE LOWER COURT'S DETERMINATION THAT THE PROPOSED ANNEXATION IS "REASONABLE" PURSUANT TO MISS. CODE ANN. § 21-1-33 (1972) WAS MANIFESTLY WRONG AND/OR UNSUPPORTED BY SUBSTANTIAL OR**

**CREDIBLE EVIDENCE.**

**II. WHETHER THE LOWER COURT ERRED IN FAILING TO CONSIDER THE TOTALITY OF THE CIRCUMSTANCES, AND IN PARTICULAR, THE TWELVE INDICIA OF REASONABLENESS.**

**III. WHETHER THE LOWER COURT ERRED IN FAILING TO ADDRESS THE ISSUES RAISED BY THE HARRISON COUNTY SCHOOL DISTRICT THAT:**

> **A) BILOXI HAS NOT SHOWN IT WILL PROVIDE REASONABLE PUBLIC SERVICES AND IMPROVEMENTS IN THE AREA PROPOSED TO BE ANNEXED WITHIN A REASONABLE PERIOD OF TIME; AND**
>
> **B) THE PROPOSED ANNEXATION, UNDER THE PRESENT STATE OF LAW, WOULD HAVE A DEVASTATING IMPACT ON THE HARRISON COUNTY SCHOOL DISTRICT.**

¶17. By separate order this Court granted the joint motion to dismiss appeal as to Appellant Harrison County School District and Appellee Biloxi Public School District pursuant to M.R.A.P. 42(b).

<u>**STANDARD OF REVIEW**</u>

¶18. The standards which a trial court must employ when considering a motion to dismiss under Rule 12(b)(6) have become quite familiar. The well pleaded allegations of the complaint must be taken as true. *See Marx v. Truck Renting & Leasing Ass'n, Inc.*, 520 So.2d 1333, 1339 (Miss.1987). Those well in mind, together with any defense asserted in the motion to dismiss, the court should not grant the motion unless it appears beyond any reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Grantham v. Mississippi Dep't of Corrections*, 522 So.2d 219, 220 (Miss.1988); *Lester Eng'g Co. v. Richland Water & Sewer Dist.*, 504 So.2d 1185, 1187 (Miss.1987); *Stanton & Assocs., Inc. v. Bryant Constr. Co.*, 464 So.2d 499, 505 (Miss.1985); *see also Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261 (1976). We employ the same standard when on appeal we are asked to consider whether a trial court's granting a motion to dismiss may have been error. *McFadden v. State*, 542 So.2d 871, 874-75 (Miss.1989).

¶19. This Court clearly reiterated the proper method to review annexation of new territory in *In Re Corporate Limits of Hattiesburg*, 588 So.2d 814, 818-19 (Miss.1991)[hereinafter *Hattiesburg*]. *Accord, In Re Extension of Corporate Boundaries of the Town of Mantachie*, 685 So.2d 724, 726-27 (Miss.1996)(hereinafter "Mantachie").

> This Court has set forth a list of factors or so called indicia of reasonableness to guide the chancellor in his determination of the reasonableness of a city's annexation request. The Court first enumerated these factors in *Dodd v. City of Jackson*, 238 Miss. 372, 396-97, 118 So.2d 319, 330 (1960), and in later decisions has expanded the list.

*Hattiesburg*, 588 So.2d at 818. This list of appropriate considerations for the Chancery Court has since grown to twelve. See e.g., *In re Enlargement of Corporate Limits Boundaries of City of Gulfport*, 627 So.2d 292, 293 (Miss.1993). As stated in *Hattiesburg*:

These factors, however, are only indicia of reasonableness, not separate and distinct tests in and of themselves. *Bassett v. Town of Taylorsville*, 542 So.2d 918, 921 (Miss.1989). The chancellor must consider all of these factors and determine whether under the totality of the circumstances the annexation is reasonable. *Id.* at 921-22; *In the Matter of the Extension of the Boundaries of the City of Vicksburg*, 560 So.2d 713, 716 (Miss.1990); *In re Enlargement of Corporate Boundaries of the City of Booneville v. City of Booneville*, 551 So.2d 890, 892 (Miss.1989); *In the Matter of the Extension of the Boundaries of the City of Jackson*, 551 So.2d 861, 864 (Miss.1989). This Court's standard of review is very limited. The Court can only reverse the Chancery Court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence.

*Hattiesburg*, 588 So.2d at 819. We also stated "[w]here there is conflicting, credible evidence, we defer to the findings below." *Bassett v. Town of Taylorsville*, 542 So.2d 918, 921 (Miss.1989). "Findings of fact made in the context of conflicting, credible evidence may not be disturbed unless this Court can say that from all the evidence that such findings are manifestly wrong, given the weight of the evidence." *Bassett*, 542 So.2d at 921. "We only reverse where the Chancery Court has employed erroneous legal standards or where we are left with a firm and definite conviction that a mistake has been made." *Id.*

## LEGAL ANALYSIS

### *City of Biloxi v. City of D'Iberville*

**I. WHETHER THE CIRCUIT COURT ERRED IN DISMISSING BILOXI'S APPEAL WHERE THE REASON FOR BILOXI'S FAILURE TO TIMELY FILE A BILL OF EXCEPTIONS WAS DUE TO THE VIOLATION OF ITS DUE PROCESS RIGHTS.**

¶20. This issue on appeal was voluntarily dismissed by joint motion of the parties.

### *Lee v. City of Biloxi*

**I. WHETHER THE LOWER COURT'S DETERMINATION THAT THE PROPOSED ANNEXATION IS "REASONABLE" PURSUANT TO MISS. CODE ANN. § 21-1-33 (1990) WAS MANIFESTLY WRONG AND/OR UNSUPPORTED BY SUBSTANTIAL OR CREDIBLE EVIDENCE.**

**II. WHETHER THE LOWER COURT ERRED IN FAILING TO CONSIDER THE TOTALITY OF THE CIRCUMSTANCES, AND IN PARTICULAR, THE TWELVE INDICIA OF REASONABLENESS.**

¶21. Annexation is a legislative affair. The judicial function is limited to the question of whether the annexation is reasonable. *City of Jackson v. Town of Flowood*, 331 So.2d 909, 911 (Miss.1976); *Ritchie v. City of Brookhaven*, 217 Miss. 860, 870-73, 878, 65 So.2d 436, 439-40, 833 (1953). That question is presented first to the chancery court, Miss. Code Ann. § 21-1-33 (1990), and invokes the interests both of the municipality seeking annexation, the owners of property and other inhabitants of the area sought to be annexed, and, as well, others who may be affected. *See City of Greenville v. Farmers, Inc.*, 513 So.2d 932, 941 (Miss.1987); *Western Line Consol. Sch. Dist. v. City of Greenville*, 465 So.2d 1057 (Miss.1985). The burden of proving the reasonableness of the annexation is on the party asserting the annexation, here Biloxi. *See Dodd v. City of Jackson*, 238 Miss. 372, 396-97, 118 So.2d

319, 330 (1960). The chancery court has the authority to confirm the entire annexation, or such part thereof, as may be found reasonable.

¶22. Here, the lower court found the proposed annexation predominantly reasonable. The chancellor approved Biloxi's annexation of parcels B-E and most of parcel A as described above.

¶23. Where the finding of reasonableness is challenged on appeal, this Court conducts no plenary review. It may reverse where--and only where--the chancery court's finding of ultimate fact that the annexation was (un)reasonable is manifestly wrong or without the support of substantial, credible evidence. *McElhaney v. City of Horn Lake*, 501 So.2d 401, 403 (Miss.1987); *Extension of Boundaries of City of Moss Point v. Sherman*, 492 So.2d 289, 290 (Miss.1986); *Enlargement of Boundaries of Yazoo City v. City of Yazoo City*, 452 So.2d 837, 838 (Miss.1984)(hereinafter *"Yazoo City"*); *Extension of Boundaries of City of Clinton*, 450 So.2d 85, 89 (Miss.1984).

¶24. The outcome determinative question of ultimate fact before the chancery court is the reasonableness of the proposed annexation. Over the years our case law has developed a number of factors that should be considered in this context. Before listing them, it should be emphasized that these factors are but indicia of reasonableness and not separate or distinct tests in and of themselves. *Bassett,* 542 So.2d at 921.

¶25. In a series of cases beginning with *Dodd*, 238 Miss. at 396-97, 118 So.2d at 330, including *McElhaney,* 501 So.2d at 403-04, and *City of Greenville v. Farmers, Inc.*, 513 So.2d 932, 941 (Miss.1987), this Court has recognized at least eight indicia of reasonableness. These are (1) the municipality's need for expansion, (2) whether the area sought to be annexed is reasonably within a path of growth of the city, (3) the potential health hazards from sewage and waste disposal in the annexed areas, (4) the municipality's financial ability to make the improvements and furnish municipal services promised, (5) the need for zoning and overall planning in the area, (6) the need for municipal services in the area sought to be annexed, (7) whether there are natural barriers between the city and the PAA, and (8) the past performance and time element involved in the city's provision of services to its present residents.

¶26. Other judicially recognized indicia of reasonableness include (9) the impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation; *Western Line*, 465 So.2d at 1059; (10) the impact of the annexation upon the voting strength of protected minority groups, *Yazoo City*, 452 So.2d at 842-43; (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and for the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the (economic and social) benefits of proximity to the municipality without paying their fair share of the taxes, *Texas Gas Transmission Corp. v. City of Greenville*, 242 So.2d 686, 689 (Miss.1971); *Forbes v. City of Meridian*, 86 Miss. 243, 38 So. 676 (1905); and (12) any other factors that may suggest reasonableness vel non. *Bassett*, 542 So.2d at 921. More recent cases have also relied upon these twelve factors. *In re Enlargement & Extension of the Mun. Boundaries of the City of Madison, Mississippi: The City of Jackson, Mississippi v. City of Madison*, 650 So.2d 490 (Miss.1995) (hereinafter, "*Madison*"); *In re Extension of the Boundaries of the City of Columbus*, 644 So.2d 1168 (Miss. 1994) (hereinafter, "*Columbus*").

¶27. Chancellor Bearden issued a lengthy opinion centered around the traditional twelve indicia of reasonableness and focusing on our most recent annexation decisions. The chancellor clearly understood the standard to be applied in this annexation matter and his task of looking at the "totality of the circumstances."

The Objectors do not contest the annexation of parcels B through E. However, they have appealed and take issue with the finding of reasonableness by the chancellor in regard to parcel A, both in whole and as modified by the chancellor.

## FACTOR NUMBER ONE

### The Need to Expand

¶28. The chancellor found that because of the growth of the gaming industry Biloxi has increased in population. Also, due to environmental concerns, Biloxi is 85 to 95% "built out" and thus lacks developable land to support its growing numbers. Harrison County disagrees and takes issue with the population count used by Biloxi and the chancellor.

¶29. In connection with its Comprehensive Plan, Biloxi utilized the services of city planning consultant Joseph Lusteck who performed an extensive land use survey which involved verifying housing and land use information by driving into every area of the city. Lusteck employed graduate student interns from the University of Southern Mississippi, a Biloxi city employee, and the full-time employees of Lusteck and Associates.[1]

¶30. Lusteck testified that 77.94% of the land area of Biloxi is developed and that the city is approximately 85% built-out with regard to land that is not subject to development constraints.[2] This is a high percentage of build-out which results in a low percentage of land available to accommodate future growth. Lusteck further stated that this is a commonly used standard and it is common for a city to annex when it is 75% build-out.

¶31. In regards to land use, Biloxi offers that Judge Bearden reviewed historical growth exhibits of Biloxi; heard no contrary testimony from the Objectors on the city's build-out; examined the extensive testimony of Lusteck, Nichols, Shambra, and Mayor Holloway; reviewed the land use survey; Environmental Influences Map; and the Comprehensive Plan Map; and personally drove with counsel throughout the city. In contrast, the Objectors offered nothing substantive, only criticisms of Lusteck's methods.

¶32. Due to geography and surrounding cities, Biloxi can only grow north. Harrison County Supervisor Bobby Eleuterius, who objected to the annexation, testified that the advent of gaming had created unprecedented growth on the Gulf Coast in the 1990's. He further admitted on cross-examination that the population, business, and economy of Biloxi is growing very rapidly.

¶33. Biloxi admits that during the 1980's its population dwindled. However, in the 1990's, Biloxi has seen a resurgence of growth. Supervisor Eleuterius testified that the population of Biloxi is expanding because of gaming. He also testified that Keesler Air Force Base, located in the heart of Biloxi has expanded due to the base closings around the country.

¶34. Traffic counts have increased substantially increased in Biloxi over the last ten years. Biloxi apartments have an occupancy rate of 90 to 100 percent. Lusteck testified that Biloxi will continue to increase in population if Biloxi has enough land to accommodate future growth.. If Biloxi allowed to grow, Lusteck further testified that its population could grow to over 80,000 in the next 25 years.

¶35. In other cases, we have concluded that cities have a need to expand based on virtually identical supporting evidence to that offered here. For example, in *Extension of Boundaries of City of*

*Ridgeland v. City of Ridgeland*, 651 So.2d 548 (Miss. 1995)(hereinafter "*Ridgeland*"), the evidence included expert testimony on population growth, increased new building permit activity, lack of available land to meet increasing development, and the need to expand the city's borders to exercise control over development and to provide comprehensive planning growth. *Id.* at 553-56; *see also Columbus*, 644 So.2d at 1173 (finding that Columbus needed to expand based in part on testimony from specific leaders that most developable land within Columbus had already been utilized); *City of Southaven v. City of Horn Lake*, 630 So.2d 10, 17-18 (Miss. 1993)(hereinafter "*Southaven*")(finding that Southaven needed to expand in part due to the rapid rate of growth of the city).

¶36. In sum, we find that there is substantial and credible evidence to support Biloxi's need to expand which has been established by Biloxi's build-out, population increase, economic growth, limited areas in which to grow, the need for developable vacant land, traffic congestion, and the city's need for access to I-10.

## FACTOR NUMBER TWO

### The Path of Growth of the City

¶37. After hearing testimony from Biloxi's witnesses and reviewing exhibits (P-430) showing growth of subdivisions from 1978 to 1996 in Biloxi and the PAA, the chancellor found that parcel A of the PAA was in the path of growth of Biloxi because Biloxi is limited in the directions it can expand.

¶38. In *Extension of the Boundaries of the City of Biloxi*, 361 So.2d 1372 (Miss. 1978)(hereinafter "*Biloxi*"), we deleted from annexation the area of Cedar Lake Road to the south of I-10, the area north of the Tchoutacabuffa River, east of Cedar Lake Road, and west of D'Iberville, because of the poor access from Biloxi. Therefore, Harrison County asserts that parcel A should not be considered apart of Biloxi's path of growth until transportation corridors are provided to connect this area to the rest of Biloxi. However, the 1978 *Biloxi* case, referred to by the Objectors, is not controlling because we expressly held that a prior annexation proceeding involving the same area is not conclusive in a subsequent case. *Biloxi*, 361 So.2d at 1375. Further, Biloxi is in the process of widening Popps Ferry road and anticipates that the state will fund another connecting road in the near future.

¶39. Biloxi counters that its path of growth is cut-off to every direction except to the north. Both Lusteck and city planner Edward Shambra testified that parcel A is in Biloxi's path of growth and is the only area available to accommodate its growth. Moreover, Biloxi argues that it is substantially "built-out." It has a rapidly increasing population and expects to have an additional four thousand people employed due to the opening of two new casinos.

¶40. Finally, in *Meridian*, 662 So.2d at 612-13, this Court found that the PAA was within Meridian's path of growth based on evidence that the PAA was immediately adjacent to the city, was accessible by in use public streets, highways, and roads, was experiencing spillover of urban development from the city, and had a community of interest with the city. *Id.*; *see also Ridgeland*, 651 So.2d at 556-58. All these circumstances are present here which likewise justifies the reasonableness of this annexation. Therefore, due to the extensive growth of Biloxi, the limited area available for expansion, the geography of Biloxi, and development in the PAA, we hold that there is substantial and credible evidence to support the finding that the PAA is in Biloxi's path of growth.

## FACTOR NUMBER THREE

### The Potential Health Hazards

¶41. Citing **Madison**, 650 So.2d 490, the chancellor found that this indicium supported the reasonableness of the annexation because the large number of septic tanks in use in the PAA pose a threat to the health of PAA residents. Despite this holding, Harrison County contends that the PAA residents will not obtain any services for sewer or water which they do not already have or have the ability to acquire. Supervisor Eleuterius testified that PAA citizens already receive solid waste and garbage disposal through the Harrison Wastewater Management District. Further, Harrison County asserts that there are no solid waste landfills in the PAA.

¶42. Over 85% of the people in the PAA are now without public water or sewer. This Court has held that the use of septic tanks in the PAA may indicate possible health risks. **Madison**, 650 So.2d at 499; *see also* **Jackson**, 551 So.2d at 866. However, we have also said that this factor is rather insignificant in the overall test of reasonableness. **Southaven**, 630 So.2d at 19-20; **Jackson**, 551 So.2d at 866. Biloxi contends that it is very important to this case where such a large number (85%) of PAA residents are without these basic services and the natural flow of water carries substances into Biloxi's current boundaries.

¶43. In **Mantachie**, 685 So.2d 724 (Miss. 1996), objectors challenged the city's sewer plan. There, we stated that plans calling for an extension of services into a PAA when economically feasible are not "per se unreasonable." **Id.** at 729 (*citing* **Columbus**, 644 So.2d at 1182). Mantachie had made "preliminary inquiries" into the level of sewer service needed and its costs but could not make a final determination until bids were submitted. **Id.** Ultimately, we found that there was a sufficient commitment to uphold the reasonableness finding because Mantachie had a general plan with cost estimates. **Id.** Similarly, Biloxi argues that it has plan developed by engineers with engineering estimates and has monies committed for the project. Thus, Biloxi argues that the plan is reasonable as the chancellor found. We agree that there is substantial and credible evidence of a potential health hazard in the PAA, and the evidence then weighs in favor of the reasonableness of the annexation.

## FACTOR NUMBER FOUR

### The Municipality's Financial Ability

¶44. After examining the city's most recent financial report and budget, hearing the testimony of Biloxi officials, and reviewing the Comprehensive Plan for the PAA, the chancellor found that this indicium was reasonable because Biloxi "has the financial ability to make the improvements, to fund them, and also to pay the necessary increase in operating expenses caused by the annexation."

¶45. Biloxi reiterates that it is in excellent financial condition and expects to increase with the addition of new casinos and gaming activity. Financial consultant Demery Grubbs, Mayor Holloway, and city planner Lusteck all testified that Biloxi has the financial capability to undertake the improvements in the PAA. No objector presented contrary testimony or evidence. Accordingly, we find that the financial ability indicium of reasonableness has been met.

## FACTOR NUMBER FIVE

## The Need for Zoning and Overall Planning

¶46. The chancellor found that the evidence strongly suggested the need for overall planning and zoning because the PAA would benefit from such. The Objectors have failed to show evidence to the contrary. We find that Biloxi is better equipped to meet the need for zoning in the PAA. *See Madison*, 650 So.2d at 499-501; *Southaven*, 630 So.2d at 20. This indicium of reasonableness has been met.

## FACTOR NUMBER SIX

## The Need for Municipal Services

¶47. The chancellor found that the PAA is in need of municipal services and that the Biloxi annexation would provide parcel A with three new fire stations in the first five years, a lower fire rating, enhanced police patrols, and the installation of several park facilities. Harrison County contends however that, based upon the testimony of Harrison County Sheriff Joe Price, Harrison County Fire Chief George Mixon, Harrison County Board of Supervisor President Bobby Eleuterius, and planning expert Michael Bridge, fire, utility, garbage collection, road and street maintenance and police services are more than adequate, if not already at a municipal level.

¶48. Although Biloxi's comprehensive plan does not detail plans for more remote undeveloped areas, Lusteck testified that these will be served when needed and economically feasible. The Objectors criticize this lack of planning. However, we have held that "[p]lans that call for extension of services into annexation areas when economically feasible are not 'per se unreasonable.'" *Mantachie*, 685 So.2d at 729 (*citing Columbus*, 644 So.2d at 1182).

¶49. As these utilities are revenue-driven enterprises, this approach makes sense. Biloxi intends to spend approximately $12 million in water and sewer investments in the first five years. We have held that "five year plans" such as Biloxi's are reasonable. *See Columbus*, 644 So.2d at 1182; *Jackson*, 551 So.2d at 861. Also, in *Madison*, this Court found that the PAA needed municipal services based in part upon testimony from the mayor that the city could provide quicker police response, additional police protection, first level fire protection, and overall planning. *Madison*, 650 So.2d at 501-02. The evidence presented in this indicium and throughout this litigation shows that parcel A will receive enhanced municipal services in accord with this Court's language in *Madison*, 650 So.2d at 594 (residents of the PAA will receive something of value in return for their tax dollars). Thus, we find that this indicium weighs in favor of the reasonableness of annexation.

## FACTOR NUMBER SEVEN

## Natural Barriers

¶50. The chancellor found that "the natural barriers are not sufficient to prohibit the annexation of the PAA." Harrison County asserts that Biloxi is attempting to annex an identical area north of I-10 which, in 1978, we deleted from Biloxi's annexation boundaries. *See Biloxi*, 361 So.2d 1372 (Miss. 1978). There, we found that the Tchoutacabuffa River was a serious impediment to accessibility and that the area north of I-10 where it crosses the river was inaccessible and unreasonable for Biloxi to include in its annexation. *See id.* at 1374. Harrison County asserts that the conditions which exist within the area today are almost exactly the same as in 1978. Most importantly, the road network is the same in terms of I-10, Cedar Lake Road, and Tchoutacabuffa River.

¶51. Similar to the ***Jackson*** decision which confirmed that county lines can be successfully crossed, Biloxi argues that the county judicial district line in this instance does not serve as a barrier. *See **Jackson***, 551 So.2d at 865-66. Other natural barriers have not prevented annexation in other cases. *See*, e.g., ***Columbus***, 644 So.2d at 1174-75 (floodplain); ***Southaven***, 630 So.2d at 23 (interstate highway); ***In re Enlargement of the Corporate Boundaries of the City of Booneville***, 551 So.2d 890, 893 (Miss. 1989) (floodways). Moreover, Biloxi has undertaken to widen Popps Ferry Road to make the PAA more accessible. Lusteck also testified that there are no natural barriers which present sufficient difficulties to annexation in light of the current growth of Biloxi. Finally, a prior ruling in 1978 is not controlling. *See **Biloxi***, 361 So.2d at 1375. Biloxi contends that its continued growth will spill over into parcel A in the immediate future and it has planned for that future. We agree with Biloxi and continue to adhere to our precedent in ***Columbus*** and ***Southaven***. For these reasons, this indicium weighs in favor of annexation.

## FACTOR NUMBER EIGHT

### Past Performance

¶52. The chancellor found that Biloxi had provided in a timely fashion the capital improvements and municipal services to the area as provided in the 1978 annexation. Harrison County disagrees and asserts that Bobby Eleuterius testified that the Harrison County Board of Supervisors has a policy of always opposing annexation. Eleuterius also testified that in the past he has been called upon many times by Biloxi for funds for roads, streets and civic projects. Further, Harrison County asserts that, even with the advent of gaming, Biloxi still relies upon the board for financial aid in road projects, bridge building and all bridge maintenance.

¶53. Michael Bridge, city plan expert for Harrison County, testified that the services promised by Biloxi in the 1978 annexation are still incomplete because of the accessibility problems with the extension of services in the area. Numerous objectors and other concerned citizens testified about the problems in Ward 7 which dealt with storm water, drainage water and sewer services.

¶54. Biloxi has approved a Comprehensive Plan which contains plans and funding to manage and upgrade facilities, services and the administration throughout the city. Lusteck testified that Biloxi has done a good job with regard to past performance. It offered zoning, full-time police and fire protection, and a full range of other municipal services. Since its last annexation Biloxi has improved to a class 5 fire rating (Harrison County is now an 8) and offers adequate fire protection. The community development department, the planning department, the zoning department, and the code enforcement department are operated in a capable and reasonable manner. Biloxi has also done a good job of maintaining its infrastructure and roads.

¶55. In response to Harrison County's accusations of improper service regarding drainage, Lusteck testified that Biloxi has undertaken to significant response to flooding complaints and has instituted a FEMA study for stormwater drainage. Additionally, the city has budgeted for stormwater improvements.

¶56. In ***Meridian***, we found that the delay in providing some of the services was a result of the undeveloped nature of the annexed territory, which had no need for services, and should not prevent annexation. ***Meridian***, 662 So.2d at 609-10. Due to the influx of gaming, there is substantial evidence that Biloxi's economy is on the rise and the city should be able to make capital improvements to the PAA.

## FACTOR NUMBER NINE

## The Impact of the Annexation

¶57. The chancellor found that "when the equities are balanced, the residents of the PAA will receive capital improvements and municipal services that will outweigh the impact of additional taxes." *See Jackson*, 531 So.2d 861, 867-68. The Objectors object to the annexation of parcel A of the PAA. The individual objectors, who reside in the PAA or in Biloxi, contend that the annexation is generally not "reasonable" under Miss. Code Ann. § 21-1-33, because it would have a negative impact on the residents of Biloxi and the PAA.

¶58. The individual objectors emphasize that "fairness to all parties has always been the proper focus of [the] reasonableness inquiry." *See Columbus*, 644 So.2d at 1172. Therefore, they contend that the chancellor's finding of reasonableness was manifestly wrong and unsupported by substantial evidence because (a) Biloxi failed to assess currently unmet needs of its citizens or to determine whether its government would add or detract from the lives of the individual objectors or other citizens, and (b) if Biloxi had made such an assessment it would have found that this annexation would adversely affect both the individual objectors and their current residents.

¶59. In *Columbus*, we posed a cost-benefit equation placing the burden on municipalities to prove that the benefits PAA residents would receive would bear some reasonable relation to the tax dollars they would be compelled to expend. 644 So.2d at 1172. The individual objectors offer this Court evidence that the costs to the PAA residents would be severe. First, Biloxi admits that its tax millage rate is among the highest in the state at 57 mills. Lusteck also testified that Biloxi would collect "impact fees" for storm water drainage from PAA residents. Biloxi charges a garbage collection fee as well as permit fees for numerous activities that currently require no such fees.

¶60. Further, some PAA residents with fixed incomes testified that the increase to Biloxi taxes might cause them to lose their homes. Other PAA residents testified that as multi-acre tract owners the imposition of municipal taxes would increase the tax burden. Further, others who own tracts in the PAA but reside elsewhere are doubly affected because of the lack of the homestead tax exemption.

¶61. In *Hattiesburg*, this Court stated as follows:

> Upon examination of the record and the chancellor's findings, however, it is clear that the chancellor accorded the proper weight to this factor of reasonableness. The people living in the proposed annexation area did not want to be a part of Hattiesburg. They wanted to maintain their rural lifestyle. They liked living in the area because the people were friendly, there was a good school close by and there was a sense of community among the residents. Some feared that if the area were annexed, they would lose their sense of community and identity.

588 So.2d at 826. The individual objectors contend that similar concerns are raised here and urge this Court to find as it did in *Hattiesburg*.

¶62. In *Southaven*, 630 So.2d at 23, we noted that the mere fact that residents in the PAA will have to pay more taxes is insufficient to defeat annexation. Rather, this Court will "balance the equities by comparing the city's need to expand and any benefits accruing to the residents from the annexation with any adverse impact, economic or otherwise, which will probably be experienced by those who live in and own property in the annexation area." *Southaven*, 630 So.2d at 23-24 (*quoting Jackson,* 551 So.2d at 867-

68.). The chancellor properly balanced these equities and found the annexation reasonable based upon substantial evidence.

¶63. This indicium of reasonableness is close. The individual objectors are apparently vehemently opposed to annexation. However, as stated above, the residents of the PAA will receive something in exchange for their tax dollars. Therefore, although the individual objectors make a strong argument against annexation under this indicium, it is only one indicium of the twelve and is not in and of itself conclusive.

### FACTOR NUMBER TEN

### The Impact Upon the Voting Strength of Protected Minority Groups

¶64. The chancellor held that the annexation would not cause any dilution of minority voting strength. Biloxi offered evidence that based on the 1990 Census the population of African-Americans constituted approximately 16.59% of a population age 18 years and older in Biloxi as presently configured and about 15.4% for Biloxi after annexation. Based on these numbers, Lusteck testified that this indicium had been satisfied. Furthermore, Lusteck testified that the annexation would have no problem of receiving approval under the Voting Rights Act. This factor should not be afforded great weight since it was not raised by an African-American. *See Columbus*, 644 So.2d at 1180; *Jackson*, 551 So.2d at 868. Therefore, this indicium does not weigh for or against the reasonableness of annexation here.

### FACTOR NUMBER ELEVEN

### Whether PAA Residents Benefit by the Proximity of the Municipality

¶65. The chancellor held that this indicium was reasonable because many of the PAA residents work in Biloxi and use Biloxi facilities. The Objectors argue that the evidence shows that the PAA is an ideal community for persons who work in cities ranging from New Orleans to Mobile because of the close proximity to I-10. The individual objectors also point out that Biloxi Mayor Holloway admitted that no empirical study had been done by Biloxi to determine how many PAA residents attend church, shop, or even work in Biloxi.

¶66. However, trial testimony established that numerous people living in the PAA work or own businesses in Biloxi. The development of the PAA has grown in large part due to its proximity to Biloxi. Citizens of the PAA have enjoyed economic benefits due to the availability of jobs, increased commercial activity as a result of the gaming industry, and the use of other Biloxi facilities. Biloxi's cultural events, festivals, and recreational facilities are fully utilized by persons within the PAA. Finally, most of the PAA has a Biloxi mailing address already. These types of factors supported annexations in *Ridgeland*, 651 So.2d at 561, and *Madison*, 650 So.2d 504-05. Thus, we find that this indicium of reasonableness weighs in favor of annexation.

### FACTOR NUMBER TWELVE

### Any Other Factors

¶67. The chancellor here discussed the effect of the D'Iberville Water and Sewer District and its purported annexation of the area of parcel A north of the City of D'Iberville. Further, he determined that Biloxi did not need all of parcel A of the PAA to accommodate its projected growth. Thus, he reduced the size of parcel

A awarded to Biloxi.

¶68. The chancellor must consider all factors and determine whether, under totality of circumstances, annexation of property is reasonable. *In re Exclusion of Certain Territory from City of Jackson*, 698 So.2d 490, 493 (Miss. 1997). Also, this Court only reverses when chancery court has employed erroneous legal standards or when it is left with a firm and definite conviction that mistake has been made. In making this determination, annexation must be viewed from perspectives of both of the city and the landowners of proposed annexation area. *Matter of Enlargement & Extension of the Mun. Boundaries of the City of Jackson*, 691 So.2d 978, 980-81 (Miss. 1997).

¶69. In effect, the chancellor's modification of parcel A works as an adequate, reasonable compromise of all the competing interests here. Biloxi is allowed to move north of the Back Bay and achieve its main goals, *i.e.* accessing I-10 and adding some growing room to the north. D'Iberville achieves its most likely goal of preventing Biloxi from annexing that portion of parcel A to its immediate north. Also, some individual objectors will remain outside the city to the north. Hence, the chancellor's finding of reasonableness should not be disturbed. The finding of reasonableness by the chancellor is affirmed.

## III. WHETHER THE LOWER COURT ERRED IN FAILING TO ADDRESS THE ISSUES RAISED BY THE HARRISON COUNTY SCHOOL DISTRICT THAT:

### A) BILOXI HAS NOT SHOWN IT WILL PROVIDE REASONABLE PUBLIC SERVICES AND IMPROVEMENTS IN THE AREA PROPOSED TO BE ANNEXED WITHIN A REASONABLE PERIOD OF TIME; AND

### B) THE PROPOSED ANNEXATION, UNDER THE PRESENT STATE OF LAW, WOULD HAVE A DEVASTATING IMPACT ON THE HARRISON COUNTY SCHOOL DISTRICT.

¶70. By separate order this Court granted the joint motion to dismiss appeal as to Appellant Harrison County School District and Appellee Biloxi Public School District pursuant to M.R.A.P. 42(b). The School District's assignment of error is therefore moot.

## CONCLUSION

¶71. The chancellor applied all the indicia of reasonableness and determined under the totality of the circumstances that annexation was reasonable. However, the chancellor also determined that annexation was only reasonable as to a certain portion of parcel A of the PAA. In making his determination, the chancellor viewed annexation from the perspective of Biloxi as well as the PAA residents and the other objectors. Therefore, we are not left with a firm and definite conviction that the chancellor made a mistake and erred. Further, we hold that there is substantial and credible evidence to support the chancellor's finding of reasonableness. Therefore, the judgment of the Chancery Court of Harrison County is affirmed.

¶72. **JUDGMENT AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, MILLS, WALLER AND COBB, JJ., CONCUR. SULLIVAN, P.J., NOT PARTICIPATING.**

1. Millsaps College senior Rogen Chhabra was hired by Lusteck to adapt a computer to hold a large capacity of data and formulate land use spreadsheets.

2. "Development constraints" include land owned by individual(s) who are not developing it.