## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 95-CA-00481-SCT

*IN RE: EXTENSION OF CORPORATE BOUNDARIES OF THE TOWN OF MANTACHIE, MISSISSIPPI: GEORGE BURCH, ON BEHALF OF HIMSELF AND OTHER OBJECTORS*

*v.*

*TOWN OF MANTACHIE, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/01/95 |
| TRIAL JUDGE: | HON. JOHN C. ROSS JR. |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | MICHAEL DAVID TAPSCOTT |
| ATTORNEY FOR APPELLEE: | THOMAS E. CHILDS, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 12/12/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/2/97 |

**EN BANC.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Town of Mantachie seeks to extend its corporate boundaries. The annexation of only one parcel is at issue in the present appeal. The Chancery Court of Itawamba County granted the annexation, and the issue in the present appeal is whether the chancellor's ruling was supported by substantial evidence. This Court determines that there is substantial evidence in support of the chancellor's ruling and affirms his decision.

### I. STATEMENT OF THE FACTS

¶2. The Board of Aldermen of Mantachie adopted an annexation ordinance on October 4, 1994 which provided for the annexation of four tracts of land abutting the town, including a narrow strip of land running along Mississippi Highway 363. On October 27, 1994, the Board filed in the Chancery Court of Itawamba County a Petition for Approval of the Annexation of the areas designated as Plats 1, 2, 3, and 4. In response to this petition, George Burch filed an objection on behalf of himself and twenty-six other persons as to annexation of the areas in which he and the other objectors lived. At the initial hearing, the chancellor ruled that the objection was confined to Plat 4 and continued the hearing until January 19, 1995 as to Plat 4 but entered a final decree approving the annexation of Plats 1, 2 and 3. The annexation of Plats 1, 2, and 3 are not at issue in this appeal. At

the January 19th hearing, the chancellor found the annexation of Plat 4 to be reasonable and required by the public convenience and necessity and issued a decree approving the annexation, from which decree as to Plat 4, the objectors appeal, assigning the following as error:

> **I. IS THE TRIAL COURT'S DECREE VOID BECAUSE THE PETITIONER FAILED TO PROVIDE PUBLICATION NOTICE OF THE HEARING IN CHANCERY COURT AS REQUIRED BY SECTIONS 21-1-33 AND 21-1-15, MISSISSIPPI CODE ANNOTATED (1972)?**

> **II. IS THE TRIAL COURT'S CONCLUSION THAT THE ANNEXATION OF PLAT 4 WAS REASONABLE SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE?**

> **III. Is THE TRIAL COURT'S CONCLUSION THAT THE ANNEXATION OF PLAT 4 WAS REASONABLE ERRONEOUS BECAUSE OF THE PETITIONER'S FAILURE TO OBTAIN RELIABLE COST ESTIMATES OF AND TO PLAN FOR IMPLEMENTATION OF THE EXTENSIONS OF SEWER COLLECTION TO PLAT 4?**

## II. LEGAL ANALYSIS

> **I. IS THE TRIAL COURT'S DECREE VOID BECAUSE THE PETITIONER FAILED TO PROVIDE PUBLICATION NOTICE OF THE HEARING IN CHANCERY COURT AS REQUIRED BY SECTIONS 21-1-33 AND 21-1-15, MISSISSIPPI CODE ANNOTATED (1972)?**

¶**3.** Miss. Code Ann. § 21-1-33 states that, upon the filing of a petition to annex, the chancellor shall fix a date for a hearing and notice shall be given as provided in § 21-1-15. The notice requirement of § 21-1-15 is satisfied by both posting notices in the area to be annexed and by publication in a newspaper which is either published or has a general circulation in the area. Neither the statute, nor the Mississippi Rules of Civil Procedure sets a time for filing the proof of the publication. M.R.C.P. 4 (c) does provide that upon completion of the newspaper publication, proof of the fact that publication was properly given shall be filed in the cause. "[F]ailure to make proof of service does not effect the validity of the service." *Id*.

¶4. A joint stipulation among the parties acknowledged that through clerical oversight and heavy workload in the clerk's office, the Publisher's Affidavit was not docketed and filed by the chancery clerk until August 22, 1995, after counsel filed their briefs for the appeal record in this case. The supplementation in this court on January 19, 1996 evidences that proof of publication was properly given according to law. The Appellants rely upon the cases of *In re Extension of Boundaries of the City of Pearl*, 365 So.2d 952 (Miss. 1979) (quoting *Myrick v. Incorporation of a Designated Area into a Municipal Corp. to be named Stringer*, 336 So.2d 209, 210 (Miss. 1976)) for the proposition that these requirements must be strictly followed. These cases are distinguishable in that they dealt with a complete failure to provide proof of publication rather than the timing of the filing of the proof of publication. Here, the counsel stipulate the delay was through a clerical error. There is no merit to this assignment of error.

## II. IS THE TRIAL COURT'S CONCLUSION THAT THE ANNEXATION OF PLAT 4 WAS REASONABLE SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE?

¶5. "The role of the judiciary in annexation (cases) is limited to one question: whether the annexation is 'reasonable.'" *Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison*, 650 So.2d 490, 494 (Miss. 1995) citing *City of Jackson*, 551 So.2d at 863. The burden of proving reasonableness under the Mississippi Code is on the municipality seeking approval of annexation, and the city must show reasonableness by demonstrating that residents of the annexed area will receive something of value in exchange for their tax dollars. *Id.* at 495.

¶6. Courts are guided in the determination of reasonableness by twelve factors, previously referred to as twelve "indicia of reasonableness." The twelve factors are not separate, independent tests which are conclusive as to reasonableness. *Western Line Consol. School Dist. v. City of Greenville*, 465 So.2d 1057, 1059 (Miss. 1985). Rather, these factors are "mere indicia of reasonableness." "The ultimate determination must be whether the annexation is reasonable under the totality of the circumstances." *City of Columbus*, 64 So.2d 861, 4 So.2d at 1172 (citations omitted). The standard of review by which this court analyzes this case is whether the chancellor's findings were supported by substantial, credible evidence. *Extension of Boundaries of City of Ridgeland v. City of Ridgeland,* 651 So.2d 548, 563 (Miss. 1995). "[I]f there is credible, conflicting evidence this court will defer to the Chancery Court's findings." *Matter of Enlargement of Corporate Limits of Hattiesburg,* 588 So.2d 814, 819 (Miss. 1991)(quoting *Bassett v. Town of Taylorsville,* 542 So.2d 918, 921 (Miss. 1989)).

¶7. In determining "reasonableness," the court must consider the proposal in light of the area as a whole, considering the concern of both the city and the landowners. *Id.* (quoting *Bassett,* 542 So.2d at 921-22). Courts are guided in their determination of reasonableness by twelve factors. *Madison,* 650 So. 2d at 494. These factors, however, are "only indicia of reasonableness and not separate and distinct tests in and of themselves." *Matter of Enlargement of Corporate Limits of Hattiesburg,* 588 So.2d 814, 819 (quoting *Bassett,* 542 So.2d at 921).

¶8. This court now analyzes the twelve factors from the record before us.

¶9. (1) <u>Need to expand</u>: The chancellor found that the town of Mantachie "is experiencing population growth and has a need to expand." The population of Mantachie has grown approximately 20 percent since 1990 due to the development of an apartment complex. The mayor testified that, even with the annexation of Plats 1, 2, and 3, the town still has no good residential building locations. *Id.* Plat 4 contains "some of the best building area" suitable for residential building since it already has existing residential structures. The mayor further testified that as many as three times the number of present structures could be built in the Plat area.

¶10. The need to expand is further evidenced by the fact that the town had to locate its new water tank and sewer lagoon outside of the municipal limits due to a lack of suitable land. Additional evidence shows that in the last 5 ½ years that the Town's sales tax revenue has doubled. This factor is well supported by credible evidence.

¶11. (2) <u>Path of Growth</u>: The chancellor found that "[T]he area designated as Plat 4 is reasonably within the path of growth." As noted above, the mayor of Mantachie testified that even with the

annexation of Plats 1, 2, and 3, there was no suitable land for building. Plat 4 has fifty existing residential houses and two businesses. The objectors argue that there is no evidence of commercial or residential development spilling out into Plat 4 and no evidence that the town is forced to grow in the direction of Plat 4 because of barriers to growth in other directions. The objectors overlooked the testimony of the Mayor that of Plats 1, 2, and 3 is unsuitable for building and that Plat 4 containing some of the best building area. As in the discussion of the first factor, the mayor testified that as many as three times the number of present structures could be built on Plat 4. This factor is supported by, at the least, conflicting credible evidence and therefore the chancellor's finding of the path of growth should be upheld under *Hattiesburg, supra*.

¶12. (3) <u>Health hazards</u>: The chancellor found "there is a need for availability of adequate sewer facilities in such area." Plat 4 is not currently served by a sewer system and residents rely solely on septic tanks for sewage disposal. Mr. Young, a state licensed sewer system installer, testified that the current arrangement constituted a "health hazard" because the area is "in wax ground" which "holds water just like a bowl" and "all of our sewer systems runs (sic) out on top of the ground." Young testified that he could "take you and show you everyone of my neighbor's . . .sewer . . . running out on top of the ground . . . mine, too." Mr Funderburk testified that he also had sewer problems at his apartment complex. *Id.*

¶13. The objectors contend that the Town of Mantachie has no future plan for the expansion of current sewer facilities other than when it is "economically feasible." The sewer situation will be addressed in the discussion of Issue III hereinafter, but for the purposes of the present issue, there is no question that the evidence shows the present arrangement to be a health hazard. The chancellor's finding that there existed a health problem which would be improved by annexation is supported by substantial, credible evidence on these facts.

¶14. (4) <u>Financial Ability to Provide Municipal Services</u>: The chancellor found that the Town of Mantachie does not presently levy any ad valorem taxes nor does it plan to do so in the future. The Town is in sound financial condition and has the present ability to provide services in the area designated as Plat 4. The only debt carried by the Town is an FHA loan for the new water system and a note for approximately $1,000 for improvements to the town park. The water system is self-supporting and produces sufficient revenue to retire the FHA loan. The Town also has sufficient revenues to retire the note on the park. The chancellor further found that public services will be rendered in the annexed territory within a reasonable time.

¶15. Mayor Moore testified that sales tax revenue has risen from approximately $4,000 per month to the present level of approximately $8,000 per month in recent years. The Town has been able to secure grants of federal money to pay for a new water storage tank and a sewage lagoon. The town has recently purchased a new $100,000 fire truck in cooperation with the Greater Mantachie Fire Protection District, for which it paid one-half of the cost up front. The mayor further testified that the town had also bought a new police car recently and had enough money to buy another one if needed.

¶16. The objectors argue that any conclusion about the present financial ability of the Town to provide municipal services can not be reached without a full and accurate estimate of the cost of providing the services. However, Plat 4 is currently served with water service by Mantachie and this service would continue post-annexation at no extra cost to the landowner. Plat 4 is currently served

with police protection by the county, and this protection would be supplemented with the Mantachie Police Department. Plat 4, likewise, has garbage collection provided by the county. This service would be replaced by collection provided by a private company contracted by the Town which would not cost the Town any extra money. The cost to residents of Plat 4 would decrease by $1.50 per month after annexation. The record supports the Chancellor's finding of the positive financial ability of the Town.

¶17. (5) <u>Zoning and Planning</u>: Mayor Moore testified that the Town presently has no zoning ordinance. There was no evidence offered that the Town participates in any form of urban planning.

¶18. (6) <u>Municipal Services</u>: The chancellor found that reasonable public services will be rendered in the annexed territory within a reasonable time." The record supports this finding with testimony that Mantachie plans to extend several services to Plat 4 if annexation is approved. First, sewer service will be extended when economically feasible. Second, garbage collection would be assumed by the town for less money to the residents. Third, police protection supplied by the county would be supplemented by Mantachie's police force. The facts are supportive of the chancellor's finding.

¶19. (7) <u>Natural Barriers</u>: The chancellor did not make a finding as to the presence or absence of natural barriers, nor was there any testimony given to this factor.

¶20. (8) <u>Past Performance</u>: The chancellor made no findings for this factor and no evidence was offered as to any prior annexations by the Town and its subsequent extension of municipal services. The Town, however, does have an exemplary record of improvement of municipal services without the imposition of ad valorem taxes as shown by the factors enumerated in Factor (4) herein, to which reference is made.

¶21. (9) <u>Economic and Other Impact on Property Owners and Residents</u>: The chancellor found that Plat 4 was currently served with water by Mantachie, with fire protection by the Greater Mantachie Fire Protection District and such service would continue if annexation were approved. The chancellor further found that Plat 4 was currently served with law enforcement and garbage collection by Itawamba County. The Itawamba County Sheriff's Department patrol cars in the area would be supplemented by the Mantachie Police Department, which had two patrol cars. The garbage would be collected at a lower cost by a private company contracted by the Town.

¶22. Lastly, the chancellor found that Plat 4 was not served by a sewer system and that there was need for such a system. The residents of Mantachie currently use septic tanks to dispose of sewage. The Town would extend the sewer lines to reach Plat 4 as soon as economically feasible. Mr. Young, a resident of the Plat 4 area and a representative of the Centerville Baptist Church, testified to the health hazards involved in the present system, which include overflowing sewage onto the ground. Additionally, his testimony supported the need for police protection. Although the objectors asserted that the present services were adequate, the chancellor's finding on creditable, disputed evidence is given deference. The objectors will receive something of value in improved services.

¶23. 10) <u>Impact on Minority Voting</u>: The chancellor made no finding on the impact of annexation on minority voting strength, nor was any proof offered.

¶24. (11) <u>Benefits without Taxes</u>: The chancellor found that Mantachie does not levy any ad valorem

taxes and has no plans to levy any in the future. There is evidence in the record that residents of Plat 4 are receiving benefits from Mantachie for which they are paying, such as the water system.

¶25. (12) <u>Any Other Factors which Suggest Reasonableness</u>: The chancellor did not make a finding for this indicia, but the record supports the fact that industrial development could be a possibility with expansion of a water line into the annexed area.

¶26. This Courts holds that the chancellor's findings of facts as to reasonableness is supported on the record of this case, and that his finding that the annexation of Plat 4 was reasonable should be affirmed on the twelve indicia of reasonableness considering the totality of the circumstances.

> ### III. IS THE TRIAL COURT'S CONCLUSION THAT THE ANNEXATION OF PLAT 4 WAS REASONABLE ERRONEOUS BECAUSE OF THE PETITIONER'S FAILURE TO OBTAIN RELIABLE COST ESTIMATES OF AND TO PLAN FOR IMPLEMENTATION OF THE EXTENSIONS OF SEWER COLLECTION TO PLAT 4?

¶27. Plans that call for extension of services into annexation areas when economically feasible are not "per se unreasonable." ***Matter of Extension of Boundaries of Columbus***, 644 So.2d 1168, 1182 (Miss. 1994). If there is "evidence of lack of commitment, such as a general failure to estimate costs and plan for implementation of municipal services, then the reasonableness can fairly be questioned." ***Id.*** As stated earlier, Mantachie has made preliminary inquiries into what type of system is needed and at what cost it could be built. Mantachie plans to extend sewer service to the Plat as soon as is economically feasible. The town cannot make a final determination of cost and type until it has allowed contractors to bid on the site.

¶28. The objectors acknowledge that the single significant municipal service promised the residents was sewer improvement, but challenge that the Town's promise to provide such services when economically feasible is not sufficient to be reasonable. The record shows by the Mayor's testimony that the Town has investigated the type of sewer system needed in the proposed annexed area and that a gravity feed type system would serve the new area well because "it goes down hill." The cost was estimated to be minimal, and no increase in user fees were expected. The plan for expansion would be financed through use of grant money and user fees. The Town has already build a half-million dollar, twenty-acre sewage lagoon which has no debt against it. The probable cost to the Town was estimated to be $75,000 to $90,000 with the infrastructure in place presently.

¶29. Although it has been pointed out that zoning decisions should not be based upon mere speculation, this Court has upheld a chancellor's decision when it is reasonable and supported by substantial credible evidence. Mantachie has the capital to fund the sewer system immediately. It has made an inquiry into the cost and type of sewer system needed and was told that the cost would be minimal for the type of gravity feed system needed.

¶30. As the record indicates, there is a commitment on the part of the Town of Mantachie to provide the services when feasible, a financial ability to pay for the improvements, and a general plan and cost analysis. This Court holds that the cost estimates and plan are sufficient to uphold the chancellor's finding of reasonableness on this issue as well. **III. CONCLUSION**

¶31. Since the chancellor has found the annexation to be reasonable and his findings are supported by substantial credible evidence under a totality of circumstances, his finding is affirmed.

¶32. **JUDGMENT IS AFFIRMED.**

**PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING:**

¶33. I agree with the majority as to issue I--the trial court did have jurisdiction to render a decree in this case. However, the Town of Mantachie has failed to estimate costs and develop a plan for implementation of municipal services. There is no substantial credible evidence to support annexation, making the lower court's decree as to Plat 4 erroneous. Therefore, I respectfully dissent to issues II and III.

¶34. The majority correctly recognizes that the annexation should have been confirmed only if it was "reasonable," and that courts are guided in their determination of reasonableness by twelve factors. However, the majority's application of the facts to these factors creates a troublesome result.

¶35. Since there was no indication that the area sought to be annexed lies within the path of growth, the first two factors mentioned by the majority, need to expand and path of growth, weigh against annexation. More importantly, the evidence revealed that there was a need for a sewage system within Plat 4. Unfortunately, it was apparent that Mantachie's funds would quickly deplete if the Town were forced to fund an extension of the sewer system. Further, the only inquiry into the cost of such an extension was a brief, informal conversation.

¶36. This Court should not find it convincing that the Town intended to address the problem when it was "economically feasible." Who would decide when it was "economically feasible?" There was no set standard for this determination other than an arbitrary conclusion. No formal surveys were made in anticipation of installing an extension to the sewer system. Without the benefit of a formal inquiry into the cost of extending services, the chancellor acted "without the support of substantial credible evidence" in finding that reasonable public services would be rendered within a reasonable time.

¶37. Further, the reasonableness of the Town of Mantachie's plans can be questioned in this case. If there is "evidence of lack of commitment, such as a general failure to estimate costs and plan for implementation of municipal services, then the reasonableness can fairly be questioned." *Robinson v. City of Columbus*, 644 So.2d 1168, 1182 (Miss. 1994).

¶38. Mantachie had not made any preliminary inquiries into what type of system was needed and at what cost it could be built. Zoning decisions must not be made upon mere speculation. The annexing city must show that the "residents of the annexed areas will receive something of value in return for their tax dollars." *Municipal Boundaries v. Madison*, 650 So.2d 490, 494 (Miss. 1995). In the case

*sub judice*, the Town has not shown that the residents will necessarily receive something of value for their taxes. The Town would supplement existing services, but the evidence does not indicate that the services would necessarily improve in the process.

¶39. There is no guarantee that Mantachie would raise the standard of living of the residents once annexed. The Town has offered no plans to extend sewer service, nor has it expressed any intention to do so other than when it was "economically feasible." Mantachie made little or no inquiry into the cost and type of sewer system needed. It has accepted no formal bids for the project from competing construction firms. The Town instead relies on one estimation made by an employee of one company for its assertion of the cost of the installation. As in *Columbus*, the Town of Mantachie has failed to estimate costs and plan for the implementation of municipal services.

¶40. Accordingly, I do not find substantial credible evidence supporting annexation. I would reverse and render the lower court's decree as to Plat 4.

**SULLIVAN, P.J., JOINS THIS OPINION.**