# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-AN-00584-SCT

*IN THE MATTER OF THE ENLARGING,*
*EXTENDING AND DEFINING THE CORPORATE*
*LIMITS AND BOUNDARIES OF THE CITY OF*
*HORN LAKE, DESOTO COUNTY, MISSISSIPPI;*
*CITY OF HORN LAKE, MISSISSIPPI*

*v.*

*TOWN OF WALLS, MISSISSIPPI, DESOTO*
*COUNTY, MISSISSIPPI AND WALLS FIRE*
*PROTECTION DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2009 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | J. CHADWICK MASK |
| | CLIFTON MICHAEL DECKER |
| | BILLY C. CAMPBELL, JR. |
| ATTORNEYS FOR APPELLEES: | JERRY L. MILLS |
| | JOHN P. SCANLON |
| | CAROLYN B. MILLS |
| | AMY HOLLIMAN BROWN |
| | ANTHONY E. NOWAK |
| | JOSEPH DAVID NEYMAN, JR. |
| | PAUL R. SCOTT |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED - 03/10/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., DICKINSON, P.J., AND KITCHENS, J.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1. The DeSoto County Chancery Court found that the proposed annexations of both the City of Horn Lake and the Town of Walls were unreasonable and denied both municipalities' petitions for approval, ratification, and confirmation of the enlargement of their respective municipal boundaries. Because the chancellor's decision was supported by substantial and credible evidence and was not manifestly wrong, we affirm.

**Facts and Procedural History**

¶2. On December 20, 2007, the Town of Walls filed a petition for the approval, ratification and confirmation of the enlargement and extension of its municipal boundary, seeking to annex approximately four square miles of territory contiguous to the municipality. The City of Horn Lake filed its separate defenses, answer, and objections on March 13, 2008. Additionally, DeSoto County filed a limited objection to the proposed annexation by the Town of Walls.

¶3. On May 14, 2008, Horn Lake filed a complaint in the nature of a petition for the ratification, approval, and confirmation of an ordinance enlarging, extending, and defining the corporate limits and boundaries of the City of Horn Lake, seeking to annex approximately nine square miles of territory immediately west of the existing city. The proposed annexation area sought by Horn Lake included almost the entire proposed annexation area sought by Walls. Walls filed an answer, affirmative defenses, and objections on June 20, 2008. The Walls Fire Protection District filed an answer and objection to the proposed extension of the municipal boundaries of the City of Horn Lake on July 21, 2008. On the same day, DeSoto County filed a limited objection to the proposed annexation by the City of Horn Lake.

2

¶4. Horn Lake filed a motion to consolidate the annexation proceedings of the Town of Walls with the annexation proceedings of the City of Horn Lake. Walls opposed the consolidation; however, the chancellor granted Horn Lake's motion on July 30, 2008.

¶5. Following a six-day bench trial, the chancellor issued a thirty-seven-page opinion detailing the rationale for finding that the proposed annexations by both Horn Lake and Walls were "unreasonable when viewed in the totality of the circumstances and must be denied in all respects and areas." Aggrieved, the City of Horn Lake appealed.[1]

## Discussion

¶6. This Court has a limited standard of review for annexation matters. *In re Enlarging, Extending and Defining Corp. Limits and Boundaries of City of Meridian*, 992 So. 2d 1113, 1116 (Miss. 2008). "The Court can only reverse the chancery court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence." *In re Extension of Boundaries of City of Hattiesburg*, 840 So. 2d 69, 81 (Miss. 2003). "Where there is conflicting, credible evidence, we defer to the findings below." *Bassett v. Town of Taylorsville*, 542 So. 2d 918, 921 (Miss. 1989). Moreover, "[f]indings of fact made in the context of conflicting, credible evidence may not be disturbed unless this Court can say from all the evidence that such findings are manifestly wrong, given the weight of the evidence." *Id*. Therefore, "[w]e may only reverse where the [c]hancery [c]ourt has employed erroneous legal standards or where we are left with a firm and definite conviction that a mistake has been made." *Id.*

---

[1] The Town of Walls, Walls Fire Protection District, and DeSoto County filed separate appellee briefs in response to the City of Horn Lake's brief of the appellant.

¶7.    "The role of the judiciary in annexations is limited to one question: whether the annexation is reasonable." *Enlargement and Extension of Mun. Boundaries of City of Madison*, 650 So. 2d 490, 494 (Miss. 1995). This Court has set forth twelve indicia of reasonableness to guide the determination of whether annexation is reasonable. *Id.* The twelve indicia of reasonableness are:

> (1) the municipality's need to expand, (2) whether the area sought to be annexed is reasonably within a path of growth of the city, (3) potential health hazards from sewage and waste disposal in the annexed areas, (4) the municipality's financial ability to make the improvements and furnish municipal services promised, (5) need for zoning and overall planning in the area, (6) need for municipal services in the area sought to be annexed, (7) whether there are natural barriers between the city and the proposed annexation area, (8) past performance and time element involved in the city's provision of services to its present residents, (9) economic or other impact of the annexation upon those who live in or own property in the proposed annexation area, (10) impact of the annexation upon the voting strength of protected minority groups, (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy economic and social benefits of the municipality without paying their fair share of taxes, and (12) any other factors that may suggest reasonableness.

*Id.* (citing *Matter of Boundaries of City of Jackson*, 551 So. 2d 861, 864 (Miss. 1989)).

¶8.    This Court further held that "[t]hese twelve factors are not separate, independent tests which are conclusive as to reasonableness." *Id.* Rather, "the ultimate determination must be whether annexation is reasonable under the totality of the circumstances." *Id.* Further, "municipalities must demonstrate through plans and otherwise, that residents of the annexed areas will receive something of value in return for their tax dollars in order to carry the burden of showing reasonableness." *Matter of Extension of Boundaries of City of Columbus*, 644 So. 2d 1168, 1172 (Miss. 1994).

4

*1.    Need to expand*

¶9.    The City of Horn Lake argues that the chancellor erred in finding that Horn Lake did

not have a need to expand, alleging that the chancellor failed to cite evidence in support of

his findings.  That allegation is at odds with both the chancellor's written order and the

record in this case.

¶10.    When determining whether a municipality has a reasonable need for expansion, the

following factors may or may not be considered:

> (1) spillover development into the proposed annexation area; (2) the City's
> internal growth; (3) the City's population growth; (4) the City's need for
> development land; (5) the need for planning in the annexation area; (6)
> increased traffic counts; (7) the need to maintain and expand the City's tax
> base; (8) limitations due to geography and surrounding cities; (9) remaining
> vacant land within the municipality; (10) environmental influences; (11) the
> city's need to exercise control over the proposed annexation area; and 12)
> increased new building permit activity.

***In re Extension of Boundaries of City of Winona***, 879 So. 2d 966, 974 (Miss. 2004).

> *a.    Spillover development into the proposed annexation area*

¶11.    The chancellor found that the spillover developments that Horn Lake attributed to its

need to expand were actually subdivisions and other developments that were part of an area

that Horn Lake previously had annexed in 2002.  Specifically, the chancellor found that the

"subdivision developments, particularly along and either side of State Highway 302[,] also

known as Goodman Road, within the first square mile of the city's western municipal

boundary and other developments are the result of spillover growth from Horn Lake . . . that

were in place and largely developed prior to Horn Lake's 2002 annexation[,] which extended

its municipal boundaries along that state highway for a period of one and a half to two

5

miles." Further, the chancellor opined that "a municipality can hardly be credited with spillover growth when it races to [sic] within a particular development which already exists and then claims that it exceeded and 'spilled over' from its municipal boundaries."

¶12. The proposed annexation area sought by the City of Horn Lake almost entirely encompassed the proposed annexation area sought by the Town of Walls. At trial, Chris Watson, the Town of Walls's expert, explained the concept of spillover growth. Specifically, he said that "[s]pillover development can have different meanings. One meaning . . . is literally a cup runneth over type spillover, and that would be . . . where development occurred within the municipality, and that development began literally falling over . . . the city limits." Watson stated that neither Horn Lake nor Walls fit that form of spillover development.

¶13. Another approach to spillover development requires consideration of the location of the development. Specifically, Watson evaluated the development of the Delta Bluff subdivision and an apartment complex near that subdivision, which were developed separately and apart from any other municipality in DeSoto County and were not spillover development from either the Town of Walls or the City of Horn Lake. Watson opined that those developments occurred at a point in time when several events were taking place: (1) flight out of Memphis, (2) development of a significant employment base from the gaming industry that had developed in Tunica County in the early 1990s, and (3) the transportation corridors provided by Highway 61, Interstate 55, and Interstate 69. Watson further reasoned that those events had led to an influx of people working at the Tunica County casinos, but living in DeSoto County, Tate County, and the surrounding area.

6

¶14. Watson also theorized that the Twin Lakes subdivisions that Horn Lake sought to annex were developed as a result of existing sewage infrastructure that was developed by North Mississippi Utility Company, which the City of Horn Lake later acquired. However, Arthur Michael Slaughter, the City of Horn Lake's expert, deduced that the Twin Lake subdivisions and newer developments have expanded because of spillover growth from the City of Horn Lake.

¶15. The chancellor was presented conflicting, credible evidence from experts for both municipalities, and the chancellor's finding that the subfactor of spillover development did not favor annexation by Horn Lake was supported by substantial, credible evidence, was well within his discretion, and was not manifestly wrong.

   *b.      Horn Lake's internal growth and population growth*

¶16. The chancellor found that approximately 797 people, annually, have moved into the corporate limits of Horn Lake since 2002, which was the year of the municipality's most recent annexation. Further, the trial court found that several subdivisions and housing developments had been commenced in Horn Lake since 2000. However, the chancellor also found that, except for one large apartment complex, the majority of those developments were largely vacant and/or undeveloped.

¶17. Slaughter testified that the population of the City of Horn Lake in 2000 was 14,099, according to the U.S. Census Bureau, and that by 2007, the population had grown to 24,133. While the population had greatly increased, Anita Rainey, the director of planning for Horn Lake, testified that residential construction had come to a complete standstill. In fact, no new

7

residential building permits had been issued during the year 2009. Further, two residential subdivisions in Horn Lake, approved for development, have been abandoned completely.

¶18. Faced with the foregoing evidence, the chancellor's findings that the subfactor of the city's internal growth weighed against annexation by Horn Lake was supported by substantial, credible evidence, was well within his discretion, and was not manifestly wrong.

      *c.      Horn Lake's need for developable land and remaining vacant land*

¶19. The chancellor relied on Horn Lake's evidence to find that the city had 3,146 acres of vacant, unconstrained land, which equated to 30.1 percent of the existing City of Horn Lake. The trial court further found that Horn Lake had an additional 1,411 acres of vacant, constrained land on which development could occur within the existing corporate limits of Horn Lake. The amount of vacant, constrained land that was suitable for development equated to 13.5 percent of the existing city. Horn Lake did not dispute that it had 3,146 acres of vacant, unconstrained land that were suitable for development. It did argue that the 1,411 acres of vacant, constrained land were largely in the flood plain and floodway, that the areas outside of the flood plain and floodway have severe slopes, and that this land could not be developed because of utility easements.

¶20. The chancellor did not state whether this subfactor weighed for or against the reasonableness of annexation by the City of Horn Lake, which was not error, as the reasonableness of annexation is determined by the totality of the circumstances. ***In re Enlargement and Extension of the Corporate Limits of the City of Madison***, 983 So. 2d 1035, 1042 (Miss. 2008).

      *d.      The need for planning in the annexation area*

8

¶21. The chancellor noted that Horn Lake's proposed annexation area was subject to the planning and zoning services provided by DeSoto County. The planning and development services provided by DeSoto County are equivalent to those provided by municipalities within the county. Because DeSoto County provides municipal-level planning by providing building inspectors, code enforcement officers, planning commission and geographic information services, the chancellor found that there was no exigent need for further zoning and planning in the annexation area. The chancellor also found that Horn Lake had failed to provide any long-range planning for the proposed annexation area.

¶22. The chancellor's findings with regard to this subfactor were supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

   e.    *Increased new building permit activity*

¶23. The chancellor acknowledged that Horn Lake had experienced a significant issuance of commercial and residential building permits in years past, but also noted that this trend had ceased in 2007. Based on uncontradicted testimony by Rainey, nine commercial building permits were issued in 2008, no commercial permits were issued in 2009, twenty-six residential building permits were issued in 2008, and no residential building permits were issued in 2009. Further, Horn Lake admitted that no new homes were under construction at the time of trial.

¶24. The trial court's findings with regard to increased new building permit activity were supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

   f.    *Other factors related to Horn Lake's need to expand*

9

¶25.    The chancellor found that Horn Lake, like most municipalities, had a need to maintain and expand its tax base for financial benefit; that no environmental influences would affect the proposed annexation area; that the need to exercise control over the annexation area was minimal; that only minimal sales tax revenues would be brought in as a result of the proposed annexation; that there were minimal geographical limitations on future expansion; and that no person from the proposed annexation area had come forward and evinced a desire to become part of Horn Lake.

¶26.    Based on the totality of the circumstances and consideration of the subfactors of the reasonableness of Horn Lake's need for expansion, the chancellor found that there was no need for the City of Horn Lake to expand.  That finding was supported by substantial, credible evidence, was well within his discretion, and was not manifestly wrong.

*2.    Path of growth*

¶27.    In determining the indicium of reasonableness for the path of growth, this Court has held that a "city need only show that the areas desired to be annexed are in 'a' path of growth [sic] this does not mean that the area is 'the most urgent or even the city's primary path of growth.'" ***In re Enlargement and Extension of Boundaries of City of Southaven***, 5 So. 3d 375, 378 (Miss. 2009) (quoting ***City of Winona***, 879 So. 2d at 977).  The path-of-growth factors to be considered are:

> (1) spillover development in annexation area; (2) annexation area immediately adjacent to the City; (3) limited area available for expansion; (4) interconnection by transportation corridors; (5) increased urban development in annexation area; (6) geography; and (7) subdivision development.

***Id.***

10

¶28.    The chancellor found this indicium to favor annexation by Horn Lake.  Horn Lake does not dispute the chancellor's findings.

*3.    Potential health hazards from sewage and waste disposal in the annexed areas*

¶29.    Horn Lake alleges that the chancellor's finding that the indicium of potential health hazards in the annexation area weighs against annexation by Horn Lake is manifestly wrong and ignores substantial, undisputed, credible evidence.  That allegation is contrary to the chancellor's written order and the record in this case.

¶30.    This Court has established the following factors which may be considered when evaluating reasonableness as related to potential health hazards:

> (1) potential health hazards from sewage and waste disposal; (2) a large number of septic tanks in the area; (3) soil conditions which are not conducive to on-site septic systems; (4) open dumping of garbage; and (5) standing water and sewage.

***In re Enlargement and Extension of Boundaries of Macon***, 854 So. 2d 1029, 1038 (Miss. 2003).

¶31.    The chancellor found some evidence of open dumping of garbage, standing water and sewage, and health hazards from sewage and waste disposal; however, he also found that the municipalities of Horn Lake and Walls had more problems with those issues than the proposed annexation area. The chancellor gleaned from the evidence that the soil conditions throughout the proposed annexation area were not conducive to on-site septic systems, and that most of the area was connected to central sewer systems available through the City of Horn Lake or the Walls Sewer District.

11

¶32. Additionally, the trial court found several homes in the proposed annexation area had on-site septic systems, and that those on-site septic systems were of little consequence to Horn Lake, as its proposal in the facilities and services plan for the proposed area of annexation indicated that only seventy-two homes were in need of sewer connections. Based on those findings, the chancellor opined that potential health hazards within the proposed annexation area were minimal. However, the chancellor found that Horn Lake had no ordinances which would require residents to connect to a central sewer system if it were available, deeming the indicium of potential health hazards to weigh against annexation by Horn Lake.

¶33. Because Horn Lake had no plan to require residents to connect to a central sewer system if available, there would be no ordinance to correct the use of septic tanks in areas where the soil conditions are not conducive to on-site septic systems and no ordinance to correct potential health hazards from those septic systems in the annexed areas. Moreover, evidence at trial demonstrated that the Rolling Green subdivision, part of Horn Lake's 1987 annexation, still had problems with raw sewage, and that Horn Lake had taken nearly twenty-two years to provide that annexed area with sanitary sewers. Accordingly, the chancellor's findings were supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

4.    *Horn Lake's financial ability to make the improvements and furnish municipal services promised*

12

¶34. Horn Lake argues that the evidence before the trial court overwhelmingly established that the City had reasonable financial ability to deliver the services and improvements it had committed to provide the residents and property owners of the proposed annexation area.

¶35. This Court has considered the following factors in determining whether there is reasonable financial ability for the annexation:

> (1) present financial condition of the municipality; (2) sales tax revenue history; (3) recent equipment purchases; (4) the financial plan and department reports proposed for implementing and fiscally carrying out the annexation; (5) fund balances; (6) the City's bonding capacity; and (7) expected amount of revenue to be received from taxes in the annexed area.

*City of Winona*, 879 So. 2d at 981-92.

    *a.    Present financial condition of the municipality*

¶36. When considering the financial condition of Horn Lake, the chancellor found that:

> despite its ratings and fund balances, [Horn Lake] is experiencing economic problems. Memos from the Mayor of Horn Lake in July 2006, implemented both a hiring freeze as well as a freeze on all existing salaries. A position of patrolman for the municipality has remained vacant for over a year because "qualified applicants" could not be found. The Mayor likewise implemented an emergency expenditure policy wherein no one was to request expenditures that were not of an emergency condition except for those expenses for which the municipality may have already received "outside funds" to finance those expenditures. In December, 2006, the Mayor submitted a grant application with the following economic statement with respect to the municipality:
>
> > *Over the last years, our city has been struggling to continue to provide and meet daily demands. In fact, for the third time in recent months, our new mayor and board of aldermen have had to take out a loan to meet state requirements and to make payroll demands due to a development company defaulting on their taxes for the third year in a row. These taxes are over $600,000 and have put the city in a financial bind having to pay the bond from city funds which has depleted much of our city's necessary operational funding revenue.*

13

Perhaps most telling, the grant writer for the municipality submitted correspondence in December of 2007, some five months prior to the petition for annexation, stating as follows:

*The influx in growth due to the recent annexation . . . has continued to strain our budget just keeping up with the daily requirements.*

The above referenced correspondence on behalf of the municipality is construed by this Court to be statements of economic need and indicators of economic stress. They do not reflect a city ready and able to take on over as much as nine square miles of new territory after having taken over eight square miles less than seven short years ago. Considering the evidence before the Court with respect to this indicia and being cognizant that the municipality has the burden of proving the reasonableness of this indicia, the Court cannot say under the totality of the circumstances that Horn Lake has met its burden. Accordingly, the Court finds this indicia weighs against annexation.

(Emphasis in original.)

¶37. The trial court's findings were supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

       b.     *Sales-tax revenue history*

¶38. The trial court found that over the last five years, Horn Lake's sales tax receipts had grown from $3,864,329 in 2004 to $4,054,885 in 2008; however, sales-tax diversions had reduced approximately $103,000 from 2007 to 2008. Horn Lake's general tax fund collections had increased from 2003 to 2007; however, the chancellor found that to be a reflection of an increase in the tax rate for Horn Lake from thirty mils in 2003 to the current forty-two mils in 2007. The chancellor stated that the tax increase of 2007 was the second highest among all municipalities in DeSoto County.

¶39. The chancellor did not say whether this subfactor weighed for or against the reasonableness of annexation by the City of Horn Lake, which was not error, as the

14

reasonableness of annexation is determined by the totality of the circumstances. *In re Enlargement and Extension of the Corporate Limits of the City of Madison*, 983 So. 2d at 1042.

       c.     *The financial plan and department reports proposed for implementing and fiscally carrying out the annexation*

¶40.    The chancellor found that Horn Lake's services and facilities plan for the proposed annexation area contained miscalculations which reflected incorrect information regarding the assessed value of property in the proposed area of annexation and the combined city. Horn Lake argued that the miscalculations were minor, even though one of the miscalculations resulted in a $4.4 million reduction in bond capacity. Accordingly, the chancellor found the evidence untrustworthy. Further, Horn Lake's municipal finance expert was impeached and discredited on cross examination, leaving the chancellor with great concerns about Horn Lake's projections and ability to provide the necessary services promised under the facilities and services plan for the proposed annexation area. The chancellor's findings were supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

       d.     *Fund balances*

¶41.    The chancellor found that Horn Lake's fund balances had remained consistent, even though the city had maintained a deficit with respect to its budget over a five-year period.

       e.     *Horn Lake's bonding capacity*

¶42.    The City of Horn Lake issued $4.5 million in general obligation refunding bonds in November 2008. The purpose of those bonds was to construct a fire station along the

15

western boundary of the city, and to purchase a Pierce Pumper fire truck for service from that fire station. However, the chancellor found that the city will be required to finance an additional $310,000 toward the purchase of that fire truck over three years.

¶43. At the trial, Slaughter estimated the bonding capacity of Horn Lake to be $18.8 million. However, on cross examination, Slaughter admitted that he had made a mistake in his calculations when determining Horn Lake's bonding capacity. When considering the totality of the circumstances with regard to bonding capacity, we are unable to conclude whether the chancellor's findings were based on substantial, credible evidence or were manifestly wrong.

     *f.*     *Expected amount of revenue to be received from taxes in the annexed area*

¶44. The chancellor found that the calculations of income from ad valorem taxes may be speculative because of the miscalculations made by Horn Lake's municipal finance exert and possible reduction of assessed values within the next five years as a result of the current economic recession. Additionally, the chancellor anticipated that the revenues to the municipality from permit fees, privilege licenses, and sewer taps will be reduced because of the economy. The trial judge also considered the tremendous slowdown in the issuance of commercial and residential building permits within the last two years.

¶45. Based on the totality of the circumstances, the chancellor found that the indicium of the municipality's financial ability to make the improvements and furnish the municipal services promised weighed against annexation by Horn Lake. The chancellor's findings were supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

16

*5.      Need for zoning and overall planning in the area*

¶46.    Horn Lake argues that, although DeSoto County provides excellent county-level planning and zoning to residents of the unincorporated areas, the evidence established that Horn Lake has an excellent planning and zoning department.

¶47.    "This Court has upheld an annexation even when a town had no zoning ordinance and presented no evidence of any urban planning." *City of Winona*, 879 So. 2d at 982 (citing *In re Enlargement and Extension of Corporate Boundaries of the Town of Mantachie*, 685 So. 2d 724, 728 (Miss. 1996). "On the other hand, this Court has upheld an annexation even though a county already had a zoning ordinance." *Id.* (citing *Extension of Boundaries of City of Ridgeland v. City of Ridgeland*, 651 So. 2d 548, 559 (Miss. 1995)).

¶48.    The chancellor held that:

> [t]he proposed area of annexation which Horn Lake seeks is currently covered by the comprehensive plan of DeSoto County, Mississippi. Unlike a number of its sister counties, DeSoto County has been involved in planning and zoning within its county boundaries since 1958. Its comprehensive plan is backed up by a fully staffed planning department, planning commission, building inspectors, code enforcement officers and geographical identification services. Further, the characteristic of the proposed area of annexation does not call for highly sophisticated planning because of its general agricultural makeup. Accordingly, the Court finds this indicia weighs against annexation.

¶49.    This Court has said that "there is little need for municipal level zoning, overall planning, or municipal services in [a] mostly rural and agricultural area." *In re Exclusion of Certain Territory from City of Jackson*, 698 So. 2d 490, 494 (Miss. 1997). At trial, Michael Bridge, an urban planning consultant and real estate developer, testified that most of the area that Horn Lake was seeking to annex was zoned agricultural residential. Based on the testimony of Bridge and Mississippi case law, the chancellor's findings were

17

supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

*6.      Need for municipal services in the area sought to be annexed*

¶50.    The City of Horn Lake alleges that the chancellor erred in holding that the proposed annexation area is generally not in need of municipal level services by Horn Lake.

¶51.    In ***City of Macon***, 854 So. 2d at 1041, this Court said that the factors to be considered in determining whether the need for municipal services is reasonable may include:

> (1) requests for water and sewage services; (2) plan of the City to provide first response fire protection; (3) adequacy of existing fire protection; (4) plan of the City to provide police protection; (5) plan of City to provide increased solid waste collection; (6) use of septic tanks in the proposed annexation area; and (7) population density.

***Id.*** (citations omitted).  Further, "in sparsely populated areas, there is less of a need for immediate municipal services." ***Id.*** at 1042.

*a.      Requests for water and sewage services*

¶52.    The trial court noted that there had been no requests for water and sewage services because those services were provided to the proposed annexation area by either the Walls Sewer District, the Walls Water Association, Inc., or the City of Horn Lake.

*b.       Plan of the City to provide first response fire protection and adequacy of existing fire protection*

¶53.    The chancellor found that Horn Lake had a plan to provide first response fire protection for the proposed annexation area; however, that obligation lies solely with the Walls Fire Protection District, which was established by the DeSoto County Board of Supervisors in 1986.  Further, that fire protection district was created pursuant to Mississippi

18

Code Section 19-5-175, which reads, in pertinent part, that "[a]s long as any such district continues to furnish any of the services which it was authorized to furnish in and by the resolution by which it was created, it shall be the sole public corporation empowered to furnish such services within such district. Miss. Code Ann. § 19-5-175 (Rev. 2003).

¶54. Horn Lake argues that it has a fire rating, pursuant to the Mississippi Rating Bureau, of Class 6, as opposed to the Class 8 rating of the proposed annexation area. However, Larry Carr of the Mississippi Ratings Bureau testified that the Horn Lake fire services were on the downside of a Class 6 and near a Class 7. Further, Carr opined that the deficiency points making Horn Lake close to becoming a Class 7 were a result of Horn Lake's acquisition of land in its 2002 annexation. Further, the chancellor noted that Horn Lake did not produce evidence of its attempts to "stem this downward slide of classification."

¶55. The chancellor did not state whether this subfactor weighed for or against the reasonableness of annexation by the City of Horn Lake, which was not error, as the reasonableness of annexation is determined by the totality of the circumstances. *In re Enlargement and Extension of the Corporate Limits of the City of Madison*, 983 So. 2d at 1042.

        *c.*      *Plan of the City to provide police protection*

¶56. The chancellor found that this subfactor favored annexation by Horn Lake. Specifically, the chancellor found that the city plans immediately to provide police protection to the proposed annexation area, and that, considering the number of sworn officers, patrol units, detectives, and equipment, the protection provided by the city would be superior to the protective services the area now receives.

19

*d. Plan of City to provide increased solid waste collection*

¶57. The trial court found that Horn Lake had a plan for immediately providing solid waste collection services; however, that provision would provide no greater service than that currently provided by a DeSoto County contract with an independent provider. The chancellor's findings were supported by substantial and credible evidence.

*e. Population density*

¶58. The chancellor found that, except for some major developments in the northeast quadrant of the proposed annexation area of Horn Lake, the area was sparsely populated and consisted largely of single family residences on large lots and agricultural areas. The chancellor's finding was supported by substantial and credible evidence.

*7. Whether there are natural barriers between the city and the proposed annexation area.*

¶59. The trial court found no evidence indicating that natural barriers exist between Horn Lake and the proposed annexation area. The City of Horn Lake does not dispute the chancellor's findings.

*8. Past performance and time element involved in the city's provision of services to its present residents*

¶60. Horn Lake argues that the overwhelming weight of the evidence establishes that the City of Horn Lake has an excellent overall record of past performance in the provision of promised services and improvements to its existing citizens, including residents and property owners previously annexed, and that the chancellor committed manifest error in finding otherwise.

¶61.    With regard to past performance of Horn Lake in providing services, the chancellor

found the following:

> In its last annexation approved by the Mississippi Supreme Court in 2002, same was approved with the understanding and projection that the municipality's current tax rate of 24.25 mils was sufficient to service the city as well as the newly acquired annexed area. However, Horn Lake has been forced to raise its taxation rate by 17.75 mils since that time.
>
> There currently exists a total of 256 homes within the existing city which remain without central sewer service. Irrespective of this, Horn Lake plans on serving 72 homes in the proposed area of annexation. As argued by counsel for Walls, these funds could be used to completely sewer the remaining part of the existing city. Indicative of the municipality's failure to deliver services to its existing city is the Rolling Green Subdivision. Since its acquisition by the January 25, 1987 annexation by Horn Lake, this area and this subdivision remain a proverbial thorn in the side of the city. Lack of sewer facilities have resulted in standing wastewater, discharge of sewage and wastewater, and other health hazards within that community. In 2004, a grant application for repair to this subdivision was finally filed. Phase 1 of the sewering of that area has now been completed, but Phase 2 has yet to begin construction, although financial arrangements apparently have been made for same. To do so after 22 years and five subsequent annexations is unacceptable.
>
> Exhibit W-4 reflects numerous problems in the existing city indicating Horn Lake's failure to enforce planning, pet ordinances, trash pickup and other services, leaving serious doubt as to its capability of doing so in the proposed area of annexation. These include the following (1) Extensive dumping of solid waste throughout the city; (2) Dilapidated housing; (3) Old overgrowth along the right of ways; (4) Failure of street construction; (5) Erosion of drainage, particularly in platted subdivisions; (6) Ponding water from improper drainage; and (7) Lack of subdivision planning exhibited by the city's failure to require interconnection between subdivisions and dead end streets without turn arounds. The internal density of the City of Horn Lake exacerbates these problems.
>
> Although the city boasts of in excess of 12 million dollars in capital improvement projects for water and sewer since the last annexation, 7 million dollars of that was for the purchase of the certificated area served by the North Mississippi Utilities Company. The city has, however, managed to spend almost 4 million dollars on street improvements within the existing city, these, however, did not occur until two years following that annexation. Finally, the Court notes that following that annexation, the city spent 7 million dollars on Latimer Parks, to better serve its citizens.

21

The city has managed to adequately staff its fire and police to serve the existing city including the area annexed in 2002. However, as noted, the annexed area has placed them in danger of a lower fire rating unless adjustments are made and there is no evidence that those adjustments are being made at this time. Considering all of the aforesaid in the totality of the circumstances, the Court cannot say with any degree of certainty that Horn Lake's past record of performance in providing services for its citizens encourages or favors annexation.

¶62. The trial court's findings were supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

9. *Economic or other impact of the annexation upon those who live in or own property in the proposed annexation area*

¶63. The City of Horn Lake faults the chancellor for not citing specific evidence in his determination that this indicium does not favor annexation by Horn Lake.

¶64. When considering the economic or other impact on residents or property owners, this Court has held that:

> the Court is required to balance the equities by comparing the City's need to expand and any benefits accruing to residents from the annexation with any adverse impact, economic or otherwise, which will probably be experienced by those who live in and own property in the annexation area. The mere fact that residents and landowners will have to start paying city property taxes is not sufficient to show unreasonableness.

*City of Winona*, 879 So. 2d at 988 (quoting *City of Columbus*, 644 So. 2d at 1172).

¶65. The trial court found that:

> [i]n return for their tax money, the area will immediately, at least for the next two years, be classified with a Class 6 rating for fire insurance premium purposes as opposed to its current Class 8. They will immediately receive enhanced police protection. However, with the exception of a small minority of the homes in the area, they will not receive central sewer services beyond that already available. Nor will they receive water, or increased garbage collection. Their planning and zoning will remain largely unaffected as well. Street lighting is proposed by the city, but only in the more densely developed

areas which, to a certain extent, are already provided lighting by maintenance associations in the subdivision. In weighing the equities between the impact of increased taxation on the residents of the proposed area of annexation and the services which they would receive, again, this Court is unconvinced that the annexation would be reasonable.

¶66. The chancellor's findings were supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

10. *Impact of the annexation upon the voting strength of protected minority groups*

¶67. At the time of trial, Horn Lake was 83 percent white, 12.3 percent black, and 4.7 percent other groups. The chancellor found that the combined city and proposed annexation area would result in the city's being 83.6 percent white, 11.7 percent black, and 4.7 percent other groups, and that the chancellor could not say that protected minority voting strength would be seriously damaged. The City of Horn Lake does not dispute the chancellor's findings.

11. *Whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy economic and social benefits of the municipality without paying their fair share of taxes.*

¶68. Horn Lake argues that the substantial and credible evidence before the trial court established that the citizens of the proposed annexation area were deriving benefits due to their proximity to the city's corporate limits without paying their fair share of taxes to support those benefits, and that the chancellor erred in finding that this indicium did not favor annexation by the City of Horn Lake.

¶69. The trial court found that:

the City of Horn Lake placed into evidence statistics which reflected nonresidents participating in the city's recreational leagues. That evidence

23

reveals that 33.2% of participation in football was by nonresidents, 44.4% of participation in organized baseball was by nonresidents, and 13.1% participation in basketball was by nonresidents. However, the municipality was not able to identify if any of these, or the extent of which these, were residents of the proposed area of annexation. The city argues that because of the transportation corridors from the proposed area of annexation to the city, members of that area routinely travel the streets of Horn Lake, shop at the stores located within the municipality, eat at its restaurants, and generally enjoy the benefits of living in proximity to the city. While it could hardly be argued that the residents of the proposed area of annexation travel the streets of Horn Lake, any shopping done in its stores or eating in its restaurants are not only a cost to the nonresidents, but they likewise pay sales taxes imposed for those items which are a benefit to the municipality. Further, although it is certainly true that sewer services are provided to members of the proposed area, likewise a monthly service is paid by those residents for that service. Accordingly, again evaluating this indicia under the totality of the circumstances, it cannot reasonably argued that the "fare share" of taxes and expenses are not paid by residents of the proposed area for any benefits which they received and which have been proven.

¶70. A thorough review of the record reveals that the chancellor's findings were supported by substantial, credible evidence, were well within his discretion, and were not manifestly wrong.

*12.    Any other factors that may suggest reasonableness*

¶71. Finally, the chancellor considered the possible impact of annexation by the City of Horn Lake on the people residing in the area serviced by the Walls Fire Protection District. The chancellor found that the Walls Fire Protection District provided services to an area that is in excess of forty square miles, that the area included the Town of Walls, the proposed annexation area of Walls, and the proposed annexation area of the City of Horn Lake. A tax of one mil was imposed by DeSoto County for the benefit of the fire protection district on all residents in that fire protection district.

24

¶72.   Following Horn Lake's 2002 annexation, the city took in six square miles of the fire protection district, which was more densely populated than other portions of the district.  As a result, the citizens of that six square mile area, which now is a part of Horn Lake, were required to pay taxes for city fire protection in addition to the one mil tax for fire protection from the Walls Fire Protection District.  As a result of the increased taxation, residents of the six square mile area became unwilling to make donations or other contributions to the Walls Fire Protection District's operation, acquisition of equipment, or training experiences.

¶73.   With regard to the current annexation, the chancellor found that:

> Horn Lake now seeks to take in an additional nine square miles of the most heavily populated area of the Walls Fire Protection District, some 60% of its remaining residents.  Not only would annexation by Horn Lake double tax the citizens of that fire protection district[,] as was done in 2002 whereby they are paying additional monies without receiving additional services, it will have a chilling effect on the district's efforts to secure funding by way of donations and dues collections.  The consequence will be that the remaining members of the fire protection district who are not annexed by Horn Lake will be forced to survive on reduced funds and resources for continued protection in fire emergencies.

¶74.   At trial, Michael Lee Hancock gave testimony regarding the negative impact of Horn Lake's 2002 annexation on the Walls Fire Protection District. Hancock's testimony was consistent with the chancellor's findings.  Accordingly, the chancellor relied on substantial and credible evidence in finding that the impact of annexation on the Walls Fire Protection District does not reasonably favor annexation by the City of Horn Lake.

### Conclusion

¶75.   Because the chancellor's findings were based on substantial, credible evidence, were not manifestly wrong, were well within his discretion, and because the chancellor did not

25

employ an erroneous legal standard, the decision of the trial court is affirmed.  *See **Bassett***,

542 So. 2d at 921.

¶76.    **AFFIRMED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, CHANDLER AND PIERCE JJ., CONCUR.  KING, J., NOT PARTICIPATING.**